PRUDENCE LIFE INSURANCE COMPANY *v.* PRISOCK

No. 43688 December 6, 1965 180 So. 2d 636

*Watkins, Pyle, Edwards & Ludlam, Robert H. Weaver,* Jackson, for appellant.

*Strong & Smith,* Louisville; *Barnett, Montgomery, McClintock & Cunningham,* Jackson, for appellee.

JONES, J.

This case was tried before the Circuit Court of Winston County. There was a stipulation that it should "be heard and tried as an equity matter," so it was heard by the Circuit Judge with no jury.

The suit was upon a health and accident policy, and alleged total disability of appellee from January 1961 to the date of the filing of the suit and thereafter. Payment of benefits for January, February, and part of March 1961 was admitted. The policy provided in the event of total disability, payments at the rate of $400 per month subject to the provision hereinafter shown. It also waived premiums after six months of total disability. Appellee sought the monthly benefits, plus $516, the amount of premiums paid by him under

protest. Further, the policy provided for certain additional benefits in event of confinement in a hospital. Plaintiff sought same for certain times spent in a hospital.

Appellant answered admitting the issuance of the policy, but denying total disability within the terms of the policy for the time alleged. It admitted payments for January, February and part of March 1961, but denied that same were due and denied it was indebted to appellee in any sum. As an affirmative defense it pled fraud in the procurement of the policy by false answers to questions as to appellee's health, previous treatments, etc., which materially affected the risk and hazard, and that the disability was from a cause which originated prior to the date of the policy.

The affirmative defenses were denied. Appellee charged that the agent who took the application was his nephew and knew all about his condition, including the fact that he carried a drainage tube as a result of an operation in 1942 for empyema. He also maintained that in answering questions on the application he made full disclosure of his condition.

After hearing the evidence, the judge found for appellee and rendered judgment for the full amount sought except that he fixed monthly benefits at $200 rather than $400.

From this judgment appellant appealed and appellee cross-appealed. We affirm the case.

Appellant assigns the following as error: (1) The finding as a matter of fact that appellee made an adequate disclosure; (2) the finding of total disability within the meaning of the policy from April 7, 1961 to February 5, 1962; (3) the admission of the deposition of Dr. L. H. Bounds; and (4) the finding that acceptance of premiums after knowledge of misrepresentation waived the right to rescind.

■■■ Appellee and cross-appellant assign and argue as error the fixing of benefits at $200 per month rather than $400.

In order to sustain appellant's assignments of error Nos. 1 and 2, we would be required to substitute our judgment for that of the trier of the facts. Appellee testified that he did make full disclosure as to matters asked him, and that the agent was his nephew and had lived in the same community, visited him, and knew of his condition and previous health experiences. The agent denied that he so knew or that disclosures were made. It was shown without dispute that appellee gave appellant written authority to consult his family physician. Appellant wrote the doctor for information. The doctor answered, but the answer was confined to the doctor's records and did not include certain information that the doctor knew outside the records. This was explained by the doctor's statement that such requests came by the dozens, and were delivered to a secretary for answers, which he signed without reading. This evidence afforded substantial proof to support the judge's finding.

■■■ On assignment No. 2, the Court had the evidence of appellee, the positive testimony of the doctor, and evidence given by neighbors to support his finding. We cannot disturb it.

■■■ The third assignment arises from the fact that in 1963, after the period of disability here involved, Dr. L. H. Bounds, an eye, ear, nose and throat specialist of Meridian, examined appellee and diagnosed one of his ailments as Meniere's disease. Appellee testified that during the period for which he sued, he had suffered from dizziness, nausea and other symptoms. His doctor related complainants by appellee of such symptoms during said time. Dr. Bounds' deposition showed some of these were symptoms of Meniere's disease and he could not give a professional opinion as to how long

appellee had been afflicted with this disease. He said that it sometimes developed rapidly and sometimes slowly. We think the deposition was competent in view of the previous testimony of the appellee and his doctor.

What has been said makes it unnecessary to pass upon the fourth assignment.

Appellee and cross-appellant contend on cross-appeal, as stated, that he should have been allowed $400 per month rather than $200. Part VII of the policy reads:

If the total monthly amount of loss of time benefits promised for the same loss under all valid loss of time coverage upon the Insured, whether payable on a weekly or monthly basis, shall exceed the monthly earnings of the Insured at the time disability commenced or his average monthly earnings for a period of two years immediately preceding a disability for which claim is made, whichever is the greater, the Company will be liable only for such proportionate amount of such benefits under this policy as the amount of such monthly earnings or such average monthly earnings of the Insured bears to the total amount of monthly benefits for the same loss under all such coverage upon the Insured at the time such disability commences and for the return of such part of the premiums paid during such two years as shall exceed the pro rata amount of the premiums for the benefits actually paid hereunder; but this shall not operate to reduce the total amount of benefits payable under all such coverage upon the Insured below the sum of two hundred dollars or the sum of monthly benefits specified in such coverages, whichever is the lesser, nor shall it operate to reduce benefits other than those payable for loss of time.

The question here depends upon the words "earnings" and "depreciation." Earnings is defined as follows:

—Verbal Noun. The word, usually in the plural form, "earnings," is used as a verbal noun meaning generally that which is earned.

In a broad sense, it refers to money or other compensation paid for services rendered, aptly applying to the pay received by both laborers and officials; it usually is limited to earnings chiefly produced by one's personal efforts as distinguished from the income derived from a business in which the investment of capital predominates, and has been defined as meaning gains of a person derived from his services or labor without the aid of capital; money or other compensation to which one had a claim for services rendered, desert, or reward; money or property gained or merited by labor, service, or the performance of something; the price of services performed; the reward of labor or the price of personal service performed.

In a more limited sense the term has been applied to the labor of workmen exclusively, and has been defined as wages, or the fruit or reward of labor; and it has been said that this is the ordinary meaning attached to the use of the word. 28 C.J.S. *Earn* at 610 (1941).

This is in accord with the great weight of authority. See 14 Words and Phrases *Earnings* 31 (1952).

In 26A C.J.S. *Depreciation* at 492 (1956), "depreciation" is defined as follows:

It has been said that, by derivation and common usage, the word means a fall in value, or a reduction of worth; that, in the ordinary sense, it is represented by the number of dollars necessary to rehabilitate the property sufficiently to place it in safe condition for operation. The word "depreciation" usually means the loss or decline in value which occurs gradually over the useful life of a material thing due to physical wear, tear, and decay, and generally is limited to losses or declines in value which are not restored by current repairs and maintenance.

"Depreciation" has been defined as meaning an act of depreciating; a fall or decline in worth from any

cause; the loss in value of some destructible property over and above current repairs; the loss, not restored by current maintenance, which is due to all the factors causing the ultimate retirement of the property; the deterioration of physical assets due to wear and tear, decay, and age; the decline in the value of an asset due to such causes as wear and tear, action of the elements, obsolescence, and inadequacy; an expense or loss occasioned by using up physical property employed as fixed capital; deterioration arising from age and use and improvements due to better methods, more economical and efficient designs, inventions, and general advance in the art, notwithstanding reasonable current repairs; a subnormal condition of physical property such as to impair the capacity for service, usefulness, and the intrinsic value of the investment; and in a particular connection, realized losses by the actual sale or exchange of property.

It is sometimes described as amounting to the sale of property through use.

With these definitions in mind, we consider the error assigned by cross-appellant. The facts were: Cross-appellant owned a large truck and trailer suitable for hauling cargo. He testified that he contracted with holders of certificates of convenience and necessity to use his truck and trailer in connection with their business in consideration of seventy-five percent of the charges collected for such transportation by him.

There were introduced what were admittedly copies of his income tax returns for the years 1958, 1959 and 1960. They were similar except for amounts and the one for 1960 illustrates cross-appellant's contention.

This report shows total collections for that year of $9,514.93; total expenses (oil, gas and grease, repairs, licenses, tags, claims and state tax permits, telephone, brokerage fees, cargo insurance, Alabama mileage book and charges, unloading charges, and depreciation) of

$7,476.56, leaving $2,038.37, which is shown as "profits from business." The depreciation is listed as $1,933.28. It is contended that this amount of depreciation should be added to the "profit" of $2,038.37, bringing his "earnings" to $3,971.68, which, of course, would be more than $200 per month.

 With this contention we cannot agree. Depreciation is a legitimate item, and where assets of substantial value are used it is a necessity in order to determine the financial status of the business and reflect its true operations.

There is also involved the fact that no division of the "profits" as between rent for the equipment and compensation for services of cross-appellant was made, but this necessitates no discussion.

Affirmed on direct and cross-appeal.

*Lee, C. J., and Rodgers, Inzer and Smith, JJ.,* concur.