TROY CALLAHAN, APPELLANT, v. WASHINGTON NATIONAL
INSURANCE COMPANY, APPELLEE.

608 N.W. 2d 592

Filed April 7, 2000.    No. S-98-1288.

M.J. Bruckner and John C. Fowles, of The Bruckner/Ballew Law Firm, P.C., for appellant.

Thomas J. Walsh, Jr., of Walsh, Fullenkamp & Doyle, for appellee.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

Miller-Lerman, J.
## NATURE OF CASE
Troy Callahan filed a declaratory judgment action against Washington National Insurance Company (Washington National) seeking a determination that Washington National was obligated to insure him pursuant to an application for health insurance which he completed on April 15, 1996. Washington National rejected Callahan's application after he was injured in a farm accident on April 30. Callahan filed a motion for partial summary judgment, and Washington National filed a cross-motion for summary judgment. The district court for Hall County reasoned that Callahan's application was an offer to purchase insurance coverage which was not accepted by Washington National. The district court overruled Callahan's motion and sustained Washington National's motion for summary judgment. Callahan appealed. We affirm.

## STATEMENT OF FACTS
Callahan began working as a farmhand for Louis Myers in March 1996. Shortly thereafter, Myers arranged for Callahan to apply for health insurance for which Myers would pay the premiums. On April 15, at the Sorenson Larson Agency in Cairo, Nebraska, Callahan filled out an application for Washington National's "WNGUARD" group plan health care insurance. Dorothy Obermeyer, a partner in the Sorenson Larson Agency, assisted Callahan in completing the application. Obermeyer wrote Callahan's responses on the application, and Callahan signed the application. Lennis Devine, Obermeyer's partner and a licensed agent of Washington National, signed the application as its "Producer."

The application contained a section labeled "Requested Effective Date" which included three options: a specific date, the date of the underwriting approval, or the first specified day of the month following the underwriting approval. The instructions for the section provided that the date requested must be at least 10 days but no more than 60 days after the application date. For his proposed effective date, Callahan selected the "date of the underwriting approval" option.

A section of the application labeled "Applicant's Attestation" contained the following language:

By signing below, I attest that I have read the completed application form and that all my answers and statements recorded therein are correct, complete and wholly true to the best of my knowledge and belief. I understand that my qualification for insurance is based upon my answers and statements. I understand: 1) that this completed application, is the basis upon which Washington National will decide to insure me . . . .

The "Applicant's Attestation" section further provided:

**I understand that the insurance applied for shall not become effective** until the date specified on the schedule page of the certificate issued by WNIC, or any amendment thereto, and the initial premium (including applicable fees) is paid in full, but in no event will insurance become effective **earlier than 10 days after the date of this application.**

The application also included a section labeled "Disclosure Authorization" which provided:

By signing below, I authorize any licensed physician, medical practitioner, hospital, clinic or other medical or medically-related facility, insurance company, Equifax, the Medical Information Bureau (MIB) or other organization, institution or person that has any information about me or my family members named in this application, or our health, to disclose to WNIC or its reinsurers, any such information. . . . This form is valid for 30 months from the date shown below.

Sometime after the application was completed, Obermeyer received a check from Myers dated April 19, 1996, in the amount of $473.52. Obermeyer forwarded the application and the check to Midwest Health Services, a representative of Washington National in Hastings. Midwest Health Services sent a letter dated April 22, 1996, to the Sorenson Larson Agency acknowledging receipt of the application and the check. Washington National received the application on April 26 and deposited the check into its account on April 30.

Callahan was injured in a farm accident on April 30, 1996. In the accident, Callahan sustained serious injuries including the

loss of his left arm from above the elbow and the loss of his right leg below the knee.

On May 9, 1996, Washington National sent a letter to Callahan informing him it was unable to accept his application for health insurance. Washington National stated in the letter, "We regret that we were not able to accept your application because of your recent accident and the severity of the injuries." Washington National enclosed a refund check in the amount of $468.52, representing the amount of the check mailed with the application less a nonrefundable application fee of $5.

Callahan filed a petition for declaratory judgment on April 14, 1997, seeking a determination that he was covered by health care insurance pursuant to the policy of Washington National for which he had applied and was entitled to all benefits provided by the policy including payment of medical bills. Washington National answered that Callahan failed to meet its underwriting guidelines at the time its underwriting department reviewed his application, that its denial was proper, and that no policy had been issued.

Callahan moved for partial summary judgment, asking the district court to find that Washington National was obligated to insure him as a matter of law. A hearing on Callahan's motion for partial summary judgment was held September 1, 1998, at which time evidence was presented and Washington National indicated it would file a cross-motion for summary judgment. The hearing was continued pending the filing of Washington National's motion. Washington National filed its motion for summary judgment, and on November 17, the district court received further evidence and heard further argument.

On November 25, 1998, the district court entered its order overruling Callahan's motion for partial summary judgment and sustaining Washington National's motion for summary judgment. In its order, the district court stated as follows:

> The Court finds that in this tragic set of circumstances the insurance application is unambiguous that the Plaintiff submitted that it was an <u>application</u> only and subject to acceptance by the Defendant company after an underwriting decision was made within a certain time period; between the time of the <u>application</u> and the acceptance

period Plaintiff suffered a medical condition upon which the Defendant refused to accept the <u>application</u> of the Plaintiff which is an unambiguous right reserved by the Defendant company at the time the <u>application</u> was presented.

(Emphasis in original.) Callahan appealed.

## ASSIGNMENTS OF ERROR

Callahan asserts that the district court erred (1) in sustaining Washington National's motion for summary judgment and holding as a matter of law that Washington National reserved the right to refuse Callahan's application based upon a medical condition that occurred after Callahan completed, signed, and delivered the application to Washington National with the first year's premium and a nonrefundable application fee and (2) in overruling Callahan's motion for partial summary judgment and failing to hold that, pursuant to the terms of the application, Washington National was obligated, as a matter of law, to provide Callahan with the coverage for which he had applied for the reason that Callahan was insurable at the time he completed, signed, and delivered the application to Washington National with the first year's premium and a nonrefundable application fee.

## STANDARD OF REVIEW

■ Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Parnell v. Madonna Rehab. Hosp.*, 258 Neb. 125, 602 N.W.2d 461 (1999). Although the denial of a motion for summary judgment, standing alone, is not a final, appealable order, when adverse parties have each moved for summary judgment and the trial court has sustained one of the motions, the reviewing court obtains jurisdiction over both motions and may determine the controversy which is the subject of those motions or make an order specifying the facts which appear without substantial controversy and direct further proceedings as it deems just. *Ferguson v. Union Pacific RR. Co.*, 258 Neb. 78, 601 N.W.2d 907 (1999).

▮ In an appeal from a declaratory judgment, an appellate court, regarding questions of law, has an obligation to reach its conclusion independent from the conclusion reached by the trial court. *Johnson v. Clarke*, 258 Neb. 316, 603 N.W.2d 373 (1999). The interpretation of an insurance policy is a question of law, in connection with which an appellate court has an obligation to reach its own conclusions independent of the determination made by the lower court. *Spulak v. Tower Ins. Co.*, 257 Neb. 928, 601 N.W.2d 720 (1999).

## ANALYSIS

Summary judgment is proper as to the party who is entitled to judgment as a matter of law. *Parnell, supra.* Because both Callahan and Washington National filed motions for summary judgment and the district court sustained Washington National's motion, this court has jurisdiction over both motions and may determine which party is entitled to judgment as a matter of law. See *Ferguson, supra.*

▮ An insurance policy is a contract which requires an offer and acceptance to be effective. *Chappelear v. Grange & Farmers Ins. Co.*, 190 Neb. 589, 210 N.W.2d 921 (1973). An application for insurance is simply an offer. *Hemenway v. MFA Life Ins. Co.*, 211 Neb. 193, 318 N.W.2d 70 (1982). In the present case, we conclude that no insurance contract was formed. Callahan submitted an application which was simply an offer, and Washington National never accepted that offer. Indeed, Callahan makes no argument that Washington National actually approved the application. Instead, Callahan argues that the district court misinterpreted the language of the application which, Callahan asserts, bound Washington National to approve the application based on his condition on the date of the application. Callahan's interpretation of the application is incorrect.

Callahan assigns two errors. First, Callahan argues that the district court erred in sustaining Washington National's motion for summary judgment and finding that Washington National had reserved the right to reject the application on the basis of conditions arising after the date of the application. Second, Callahan argues that the district court erred in denying his motion for partial summary judgment and failing to find that the

application required Washington National to consider only his condition on the date of the application. Both assignments of error require resolution of whether the correct interpretation of the language of the application is that determined by the district court or that urged by Callahan. The district court's interpretation of the application was correct as a matter of law.

The application Callahan submitted would have become a part of the insurance contract if a contract had been made, and the application should be interpreted pursuant to the rules of construction applied in interpreting an insurance contract. See *Adolf v. Union Nat. Life Ins. Co.*, 170 Neb. 38, 101 N.W.2d 504 (1960). In an appellate review of an insurance policy, the court construes the policy as any other contract to give effect to the parties' intentions at the time the writing was made. Where the terms of a contract are clear, they are to be accorded their plain and ordinary meaning. *Farm Bureau Ins. Co. v. Witte*, 256 Neb. 919, 594 N.W.2d 574 (1999).

In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous. *American Family Ins. Group v. Hemenway*, 254 Neb. 134, 575 N.W.2d 143 (1998). Whether a document is ambiguous is a question of law, and an appellate court considering such a question is obligated to reach a conclusion independent of the trial court's decision. *Dahlke v. John F. Zimmer Ins. Agency*, 252 Neb. 596, 567 N.W.2d 548 (1997). A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Ray Tucker & Sons v. GTE Directories Sales Corp.*, 253 Neb. 458, 571 N.W.2d 64 (1997). The fact that parties to a document have or suggest opposing interpretations of the document does not necessarily, or by itself, compel the conclusion that the document is ambiguous. *Moller v. State Farm Mut. Auto. Ins. Co.*, 252 Neb. 722, 566 N.W.2d 382 (1997).

Interpretation of an unambiguous term or provision in an insurance policy presents a question of law. *American Family Ins. Group, supra.* While an ambiguous insurance policy will be construed in favor of the insured, ambiguity will not be read into policy language which is plain and unambiguous in order to construe against the preparer of the contract. *Id.*

Applying the above rules of construction, we conclude that the application in the instant case is not ambiguous and that the district court did not err in its interpretation of the application. In the application, Callahan attests to understanding that the insurance would not become effective until the specified date which he had selected, and the application clearly states that the selected specified date was the date of the underwriting approval. The application was Callahan's offer. A term of Callahan's offer was that, if accepted, the effective date of coverage was to be the date of underwriting approval. It is undisputed that underwriting approval was not forthcoming.

Notwithstanding the provision in the application that the effective date awaited underwriting approval, Callahan argues that language in the "Applicant's Attestation" section stating that "this completed application, is the basis upon which Washington National will decide to insure me" meant that the completed application was the exclusive basis upon which Washington National would make its underwriting decision and therefore bound Washington National to evaluate Callahan's application based solely on his condition on the date of the application as reflected in "this completed application." Callahan's interpretation is not warranted by the language of the application.

The language cited by Callahan, i.e., "this completed application, is the basis upon which Washington National will decide to insure me," does not impose upon Washington National the requirement that it insure Callahan without reference to information outside the "completed application." Additional language in the application contradicts any inference that such a requirement was imposed. In construing an insurance contract, a court must give effect to the instrument as a whole and, if possible, to every part thereof. *Central Waste Sys. v. Granite State Ins. Co.*, 231 Neb. 640, 437 N.W.2d 496 (1989). In the "Disclosure Authorization" section, Callahan authorizes any "organization, institution or person that has any information" about Callahan or his health to disclose such information to Washington National. Further, the requested effective date section states that the requested effective date must be at least 10 days but no more than 60 days after the application date. Taken together, these provi-

sions indicate that Washington National would investigate information outside the application and that following such investigation, the policy, if accepted, would be effective 10 to 60 days after the application date depending on the effective date selected by the applicant. Giving effect to the application as a whole, one could not reasonably conclude that Washington National was bound to consider only information regarding Callahan's condition on the date of the "completed application."

## CONCLUSION

We reject Callahan's argument that Washington National was obligated, as a matter of law, to accept Callahan's application based on his condition on the date of the application. We conclude that the language of the application signed by Callahan was not ambiguous and that the district court did not err in interpreting the application as an offer which was "subject to acceptance by [Washington National] after an underwriting decision was made" and that Washington National properly "refused to accept the application." No contract of insurance was formed. We therefore affirm the order of the district court entering summary judgment in favor of Washington National.

AFFIRMED.

HENDRY, C.J., not participating.