STODDARD v CITIZENS INSURANCE COMPANY OF AMERICA

Docket No. 225493. Submitted December 11, 2001, at Detroit. Decided January 29, 2002, at 9:20 A.M. ·

Tamara Stoddard brought an action in the Oakland Circuit Court against Citizens Insurance Company of America, seeking uninsured motorist benefits under an automobile insurance policy of the defendant that listed "Stoddard's Lawn Shapers, Tim Stoddard, DBA" as the named insured and a 1995 Ford pick-up as "the covered auto." Tim Stoddard is the husband of the plaintiff and the sole proprietor of Stoddard's Lawn Shapers. The plaintiff's automobile accident involving an uninsured motorist occurred while she was driving an automobile owned by her employer, Ciba Vision, who did not carry uninsured motorist coverage. The court, Fred M. Mester, J., granted summary disposition for the defendant after the court determined that uninsured motorist coverage under the defendant's policy applies only to the vehicle listed in the policy as "the covered auto." The plaintiff appealed.

The Court of Appeals held:

1. Uninsured motorist coverage is not required by the no-fault act, MCL 500.3101 et seq., and, if disputed, is determined by the language of the insurance policy at issue.

2. The defendant's policy unambiguously provides uninsured motorist coverage in circumstances beyond those involving the "covered auto," including the accident at issue.

3. The plaintiff is an insured under the defendant's policy. The policy classifies the named insured as an individual and includes members of an individual's family among the insured. Under Michigan law, the term "individual" is recognized as designating a natural person and not including business entities such as corporations. The plaintiff, being a member of Tim Stoddard's family, is an insured under the policy.

Reversed.

1. INSURANCE — NO-FAULT — UNINSURED MOTORISTS.

Uninsured motorist coverage is not required by the no-fault act and thus the existence of such coverage, where disputed, is determined

by the language of the particular automobile insurance policy (MCL 500.3101 *et seq.*).

2. INSURANCE — POLICIES — AMBIGUITIES — JUDICIAL CONSTRUCTION.

Ambiguous terms in an insurance policy are construed by a court against the insurer and in favor of the insured.

*Freedman, Krochmal & Goldin, P.C.* (by *Walter H. Smith, Jr.*), for the plaintiff.

*Denise L. Mitcham & Associates* (by *Pamela Hobbs*), for the defendant.

Before: MURPHY, P.J., and NEFF and HOEKSTRA, JJ.

NEFF, J. Plaintiff, Tamara Stoddard, appeals as of right the trial court's order granting summary disposition in favor of defendant, Citizens Insurance Company of America, in this breach of contract action following defendant's denial of plaintiff's claim for uninsured motorist coverage. We reverse.

I

This appeal stems from plaintiff's claim for uninsured motorist coverage under plaintiff's husband's commercial automobile insurance policy. On October 11, 1996, while driving a vehicle owned by her employer, Ciba Vision, plaintiff was involved in an automobile accident with an uninsured motorist. Ciba Vision, did not carry uninsured motorist coverage on the automobile plaintiff was driving. Plaintiff filed a claim under Citizens' insurance policy covering her husband's landscaping business, Stoddard's Lawn Shapers, a sole proprietorship, on the basis that she was an insured under the policy's uninsured motorist endorsement. When defendant denied her claim, plaintiff filed a breach of contract action against

defendant. The trial court granted summary disposition for defendant, concluding that plaintiff was not entitled to uninsured motorist coverage because the accident did not involve the vehicle covered under defendant's policy:

> · The policy states in the schedule of coverages that the uninsured coverage applies only for covered autos as described in item three of the declaration. The only vehicle listed there is a 1995 Ford pick up. Thus, the vehicle which Plaintiff was driving is not a vehicle for which the uninsured coverage applies.

We disagree.

II

This case presents an issue of first impression concerning uninsured motorist coverage under Michigan's no-fault insurance system. Stated simply, the issue is whether the automobile policy's uninsured motorist protection follows the person (the insured) or the vehicle (the covered auto). Defendant argues that under the policy at issue, the only vehicle covered for uninsured motorist protection is a 1995 Ford pick-up, which was not involved in the accident; thus, there is no coverage. Plaintiff argues that under the terms of the policy, uninsured motorist protection is provided to an "insured," she is an "insured" under the policy, none of the exclusions to the uninsured motorist coverage apply, and, thus, she is entitled to coverage.

III

This Court reviews de novo as a question of law a trial court's grant of a motion for summary disposi-

tion. *Ardt v Titan Ins Co*, 233 Mich App 685, 688; 593 NW2d 215 (1999). Because uninsured motorist coverage is not required by statute, the language of the insurance policy determines the conditions of coverage. *Auto-Owners Ins Co v Harvey*, 219 Mich App 466, 470; 566 NW2d 517 (1996). An insurance policy that is clear and unambiguous must be enforced in accordance with its terms. *Id.* at 469. Where the terms of an insurance policy are ambiguous, the ambiguity must be construed against the insurer and in favor of the insured. *Id.* If a fair reading of the entire contract of insurance leads to a conclusion that there is coverage under particular circumstances, and another fair reading results in a conclusion that there is not coverage under the same circumstances, the contract is ambiguous. *Auto Club Ins Ass'n v DeLa-Garza*, 433 Mich 208, 213; 444 NW2d 803 (1989).

A

Historically, in Michigan, uninsured motorist protection was considered "portable," that is, it followed the person. Consequently, uninsured motorist protection covered bodily injury of the insured whenever the claim involved an uninsured motorist, whether the claimant was in the covered auto, in another vehicle, or injured as a pedestrian: "The insured and family members are covered not only when occupying the covered vehicle, but also when in another automobile, and when on foot, on a bicycle or even sitting on a porch." *Bradley v Mid-Century Ins Co*, 409 Mich 1, 24; 294 NW2d 141 (1980). However, this law evolved before no-fault insurance and was based on a Michigan statute that mandated uninsured motorist coverage unless rejected in writing, which was

repealed in 1973 after Michigan adopted no-fault insurance. *Id.* at 23, 50-52.

Because uninsured motorist protection was statutorily required in policies for all persons "insured thereunder," the courts' view was that the statute and underlying public policy dictated that all persons insured for public liability under a policy have fully portable uninsured motorist protection. *Id.* at 34, 36. Now that the statutory mandate no longer exists, this rationale no longer applies, and uninsured motorist protection is generally a matter of the parties' contract, i.e., the insurance policy terms. *Rohlman v Hawkeye-Security Ins Co*, 442 Mich 520, 522, 525; 502 NW2d 310 (1993). We therefore must look to the provisions of the policy at issue to determine the extent of uninsured motorist coverage.

B

The uninsured motorist endorsement in the policy at issue provides:

a. coverage

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle." The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle."

\*       \*       \*

b. who is an insured

1. You.

2. If you are an individual, any "family member."

3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto." The covered "auto"

must be out of service because of its breakdown, repair, servicing, loss or destruction.

4. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured."

C. EXCLUSIONS

This insurance does not apply to any of the following:

1. Any claim settled without our consent.

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

"Bodily injury" sustained by:

a. You while "occupying" or when struck by any vehicle owned by you that is not a covered "auto" for Uninsured Motorists coverage under this Coverage Form;

b. Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form; or

c. Any "family member" while "occupying" or when struck by any vehicle owned by you that is insured for Uninsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

The policy's *Schedule of Coverages and Covered Autos* lists "Uninsured/Underinsured Bodily Injury" adjacent to a covered auto code of "07," referring to the *Business Auto Coverage Form* codes, on which "7" equals "Specifically Described 'Autos,'" identified as "[o]nly those 'autos' described in ITEM THREE of the Declarations for which a premium charge is shown . . . ." The *Business Auto Coverage Declaration* reflects an uninsured/underinsured premium of $24 for only one vehicle, the 1995 Ford pick-up. Thus, defendant contends that the uninsured motorist endorsement does not provide coverage in this case because the endorsement covers only the 1995 Ford

pick-up, which was not involved in plaintiff's accident.

Defendant's contention is not supported by the terms of its policy. In fact, the policy appears to be typical of the standard policy developed by the insurance industry when uninsured motorist coverage was statutorily mandated, and portable, as described in *Bradley, supra* at 23-24:

> The uninsured motorist endorsement was developed and the policy language defining its scope was drafted in the 1950's by the insurance industry and have become fairly standard. By 1968, legislation in 46 states required that uninsured motorist coverage be offered with all automobile liability insurance policies issued within the state. Most of the statutes, including Michigan's, contain similar or identical language, requiring that the coverage be provided unless expressly rejected in writing, without defining the scope of the coverage or permissible exclusions and limitations.
>
> Subject to a variety of exclusions and limitations, the standard endorsement provides "family protection" for the insured and family members against loss caused by an uninsured motorist without regard to whether the covered vehicle is involved in the accident. The coverage is portable: The insured and family members are covered not only when occupying the covered vehicle, but also when in another automobile, and when on foot, on a bicycle or even sitting on a porch.
>
> The exclusions and limitations of the standard endorsement have been the subject of much litigation and comment. The two most often encountered, the "owned vehicle" exclusion and "other insurance" clause, have been dealt with by courts across the country and held invalid by a clear majority as contrary to the public policy of the uninsured motorist statutes. [Footnotes omitted.]

See also *DeLaGarza, supra* at 223, dissenting opinion of RILEY, C.J., (citing 12A Couch, Insurance [2d ed],

§ 45:634, p 127, with respect to a 1984 insurance policy, for the proposition that an accident must involve *an insured person* or *an insured vehicle* to collect under uninsured motorist coverage).

C

Reading the definitions and exclusions to the uninsured motorist coverage of the policy, we find that it unambiguously provides coverage in circumstances beyond those involving the covered auto, including the accident at issue. Under the definition of an "insured," the policy specifically limits liability for persons other than the named insured and family members to anyone " 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto.' " If the policy contemplated uninsured motorist liability only when the claim involved the covered auto, as defendant contends, it would be unnecessary to otherwise limit liability for guests to those occupying the covered auto. Defendant's reading of the policy renders part B, ¶ 3 redundant. There would be no reason to distinguish between situations involving the named insured and family members as opposed to other persons. Clearly, the policy was intended to follow the named insured and family members when they were not occupying the covered auto and sustained injury from an uninsured motorist.

Likewise, if the uninsured motorist coverage applied only when the covered auto was involved there would be no need for the "owned vehicle exclusion"[1] in part C, limiting liability in circumstances

---

[1] *Bradley, supra* at 21.

where the named insured or a family member was not occupying the covered automobile, but was in another *owned* vehicle that was not a covered auto under the policy.

Directly supporting our conclusion is a recent Maryland Court of Appeals case, *Bushey v Northern Assurance Co of America*, 362 Md 626; 766 A2d 598 (2001), analyzing an almost identical policy and the exact issues presented in this case and concluding that the policy provided uninsured motorist coverage to the daughters of a sole proprietor under a commercial automobile policy issued to his business, when the daughters were killed while using their grandfather's vehicle, which was not a covered auto under the policy. As the *Bushey* court concluded, *id.* at 636, if defendant's reading of the policy were correct, it would be unnecessary to exclude from "[b]odily injury," an injury sustained by the named insured or a family member in any vehicle owned by them that is not a covered auto, and there would be no need to distinguish situations involving nonfamily members, as in part B, ¶ 3. See also *Michigan Twp Participating Plan v Pavolich*, 232 Mich App 378, 383; 591 NW2d 325 (1998) (noting in dicta that if the defendant qualified as the named insured, he could collect underinsured benefits even if he was not occupying the covered auto at the time of injury).

The provisions of defendant's policy, particularly the uninsured motorist exclusions, belie any intent that the uninsured motorist protection applies only when the 1995 Ford pick-up is involved in the accident. Further, if defendant had intended to limit uninsured motorist liability to circumstances involving the covered auto, it could have used limiting language

similar to that used in part A, ¶ 1, with regard to the uninsured motor vehicle: "liability . . . must result from the *ownership, maintenance or use* of the 'uninsured motor vehicle' " (emphasis added). *DeLaGarza, supra* at 215.

Even if the terms of the policy were considered ambiguous with regard to the covered auto limitation, the result is the same. The policy must be interpreted in plaintiff's favor; thus, coverage would not be limited to accidents involving the covered auto. *Harvey, supra* at 469.

The trial court erred in granting summary disposition on the ground that plaintiff was not driving the "covered auto."

D

Finally, defendant apparently does not dispute that plaintiff is an "insured" under the policy, although we found no Michigan case law addressing this point. The policy lists the named insured as "Stoddard's Lawn Shapers, Tim Stoddard, DBA." It is undisputed that the business is a sole proprietorship, owned by Tim Stoddard. The policy classifies the insured as an "individual" on the *Common Policy Declaration* as well as the *Schedule of Coverages and Covered Autos*. Even though the policy is a commercial automobile policy issued to a sole proprietorship, we conclude that the policy language defining an insured as a "family member" is applicable and operates to provide coverage to plaintiff. "Under Michigan law, the term 'individual' is recognized as designating a natural person and not including business entities such as corporations." *Harvey, supra* at 470-471 (individual

partner was not a first named insured on an insurance policy issued to his partner, "d/b/a Eastern Equipment Company").

Our conclusion coincides with the decision reached by the *Bushey* court after an extensive analysis of case law from other jurisdictions. See *Bushey, supra* at 636-643. The *Bushey* court concluded that the "you" of the policy was not a business entity separate from Bushey, where the policy identified the insured as "William Bushey t/a Bushey's Automotive Repair." *Id.* at 636. As with the issue of coverage above, even if defendant's policy language were viewed as ambiguous, the provisions must be read in favor of the insured. The policy thus must be interpreted to include plaintiff, a family member, in the definition of an insured.

Reversed.