RAYMOND REISIG, APPELLANT, V. ALLSTATE INSURANCE
COMPANY, A CORPORATION, APPELLEE.
645 N.W.2d 544

Filed June 14, 2002.   No. S-01-424.

Dave Eubanks, of Van Steenberg, Mullin, Pahlke, Smith, Snyder, Petitt & Eubanks, P.C., for appellant.

John M. Burns and James W. Nubel, of Burns Law Firm, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## INTRODUCTION

Raymond Reisig filed a declaratory judgment action against Allstate Insurance Company (Allstate), seeking a declaration that the injuries he sustained as a passenger in an uninsured vehicle were covered under the uninsured motorists coverage endorsement (uninsured motorists endorsement) of his Allstate insurance policy. The Kimball County District Court sustained Allstate's motion for summary judgment and dismissed Reisig's declaratory judgment action. Reisig appeals.

## FACTUAL BACKGROUND

The evidence presented at the summary judgment hearing, which was not disputed by either party, revealed the following facts: On February 26, 1998, Reisig was a passenger in a 1985 Chevrolet pickup truck driven by its owner, Emigdio Pruneda. As Pruneda was driving southbound on Highway 71, he lost control of the vehicle on an ice-covered portion of the highway approximately 9 miles north of Kimball, Nebraska. The vehicle went off the road and rolled over into the ditch. Reisig claimed he sustained injuries as a result of the accident.

Pruneda and his vehicle were uninsured at the time of the accident. Pruneda had failed to pay the premium on his insurance policy, and as a result, his insurance had been canceled as of January 12, 1998.

Reisig had a "Business Auto" insurance policy issued by Allstate, which was in effect at the time of the accident. Reisig's policy provided automobile liability coverage and contained an uninsured motorists endorsement. Both the insurance policy and the uninsured motorists endorsement listed "Raymond C. Reisig DBA Wild West Auction" as the named insured.

The portion of Reisig's insurance policy providing for automobile liability coverage stated:

## SECTION II - LIABILITY COVERAGE
**Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

. . . .

**1. Who Is An Insured**

The following are "insureds":

**a.** You for any covered "auto".

**b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow . . . .

Reisig's coverage for uninsured motorists was enumerated on the declarations sheet of the policy. The number "07" appeared next to "UNINSURED MOTORISTS" on the declarations sheet which, according to the policy's **Description Of Covered Auto Designation Symbols,**" signified "Specifically Described 'Autos.'" The "Specifically Described 'Autos'" were those "'autos'" described in the policy's **"SCHEDULE OF COVERED AUTOS YOU OWN."** The schedule described six vehicles, none of which were Pruneda's Chevrolet pickup truck.

The uninsured motorists endorsement contained in the policy provided, in pertinent part:

## THIS ENDORSEMENT CHANGES THE POLICY.
## PLEASE READ IT CAREFULLY.
## NEBRASKA UNINSURED AND UNDERINSURED
## MOTORISTS COVERAGE

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Nebraska, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

. . . .

## LIMIT OF INSURANCE
$ $300,000

. . . .

### A. Coverage
**1.** We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle" or "underinsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle" or "underinsured motor vehicle".

. . . .

### B. Who Is An Insured
**1.** You.

**2.** If you are an individual, any "family member".

**3.** Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

**4.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

### C. Exclusions
This insurance does not apply to any of the following:

. . . .

**3.** "Bodily injury" sustained by:

**a.** You while "occupying" or when struck by any vehicle owned by you that is not a covered "auto" for Underinsured Motorists Coverage under this Coverage Form[.]

On March 26, 1999, Reisig filed a declaratory judgment action against Allstate. Reisig claimed that he incurred $55,000 in damages for medical treatment and $10,000 for lost wages, salary, profits, and time. He also claimed general damages for pain and suffering, permanent disability, and lost earning capacity. Reisig requested a declaration that (1) the vehicle he was in at the time

of the accident was an uninsured vehicle, (2) the uninsured motorists endorsement of his insurance policy provides coverage for the injuries he sustained in the accident, and (3) he sustained special damages of $60,000 and general damages up to the $300,000 policy limit of the uninsured motorists endorsement.

On December 22, 2000, Allstate filed a motion for summary judgment. On January 16, 2001, a hearing was held on the motion. Allstate argued that the entire uninsured motorists endorsement should be interpreted in the context of the phrase "For a covered 'auto,' " which appears in the first sentence of the endorsement. Allstate maintained that, so interpreted, the definition of an insured under the uninsured motorists endorsement was not simply "You," but, rather, "For a covered 'auto' . . . You." Brief for appellee at 3. Allstate asserted there was no discernible difference between this definition of an insured and the definition of an insured in the liability coverage provisions of the policy as "You for any covered 'auto.' " Allstate contended that summary judgment should be granted since Reisig was not occupying a "covered 'auto' " at the time of his accident which, according to Allstate, was required under both the liability coverage provisions and the uninsured motorists endorsement.

On March 12, 2001, the district court granted summary judgment in favor of Allstate. Analyzing Reisig's insurance policy, the court focused on the "limiting language" in the first sentence of the uninsured motorist endorsement, which began with the phrase, "For a covered auto." The court agreed with Allstate that such language was consistent with the "original base policy" which "limits coverage to the insured when in a covered auto." The court concluded that Reisig was not covered under the policy, and thus, he could not recover for his injuries. The court then dismissed Reisig's declaratory judgment action. Reisig appeals.

## ASSIGNMENT OF ERROR

Reisig assigns, rephrased, that the district court erred in sustaining Allstate's motion for summary judgment and dismissing his declaratory judgment action.

## STANDARD OF REVIEW

The interpretation of an insurance policy is a question of law, in connection with which an appellate court has an obligation

to reach its own conclusions independently of the determination made by the lower court. *Tighe v. Combined Ins. Co. of America*, 261 Neb. 993, 628 N.W.2d 670 (2001).

Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Ohio Cas. Ins. Co. v. Carman Cartage Co.*, 262 Neb. 930, 636 N.W.2d 862 (2001). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*; *Tighe, supra.*

## ANALYSIS

Before analyzing Reisig's claims, we first note that a copy of Reisig's insurance policy was not included in the original bill of exceptions for this appeal. It is incumbent on the party appealing to present a record which supports the errors assigned, and absent such a record, the decision of the lower court will be affirmed. *Harders v. Odvody*, 261 Neb. 887, 626 N.W.2d 568 (2001); *J.B. Contracting Servs. v. Universal Surety Co.*, 261 Neb. 586, 624 N.W.2d 13 (2001). However, it is also the rule that once an adequate request has been made by an appellant, the preparation of the bill of exceptions becomes an internal court matter, and it is the duty of the court reporter to properly fulfill the request. *Sindelar v. Hanel Oil, Inc.*, 254 Neb. 975, 581 N.W.2d 405 (1998); *Shuck v. Jacob*, 250 Neb. 126, 548 N.W.2d 332 (1996); *State v. Slezak*, 230 Neb. 197, 430 N.W.2d 533 (1988). See, also, Neb. Ct. R. of Prac. 5 (rev. 2001).

Reisig filed with his notice of appeal a "Request for Bill of Exceptions," which asked the court reporter to include the "Hearing on Defendant's Motion for Summary Judgement held on January 16th, 2001, excluding argument of counsel, but including any and all exhibits offered at the time of the hearing on Motion for Summary Judgement, whether or not received into evidence." It was clear from the transcription of the January 16, 2001, hearing that Reisig's insurance policy was included as an attachment to an exhibit offered at the hearing.

Since Reisig was entitled to have all exhibits from the hearing on January 16, 2001, included in the bill of exceptions, we issued an order instructing the court reporter to complete the bill of exceptions. This court has now received the complete bill of exceptions, which includes the insurance policy at issue in this appeal. We thus proceed to address Reisig's assignment of error.

Reisig argues that the district court erred in sustaining Allstate's motion for summary judgment and dismissing his declaratory judgment action. Specifically, he asserts that the district court erred in concluding that the introductory phrase ("For a covered 'auto' ") when read together with the definition of an insured ("You") in the uninsured motorists endorsement was consistent with the "You for any covered 'auto' " definition of an insured in the liability coverage provisions. Reisig contends that the uninsured motorists endorsement simply defines an insured as "You," and thus, since it is undisputed that he is the named insured, his injuries should be covered under the policy. Unlike the district court, Reisig contrasts the definition of an insured under the uninsured motorists endorsement ("You") with the definition of an insured under the liability coverage portion of the policy ("You for any covered 'auto' "). He asserts that the insurance policy provides broader coverage under its uninsured motorists coverage provisions than it does under its liability coverage provisions.

Allstate maintains that the insurance policy limits Reisig's coverage to "any covered 'auto' " for both liability coverage and uninsured motorists coverage. It asserts "[t]he clear language of the commercial policy limited coverage to scheduled autos. As Mr. Reisig was not in a vehicle listed on the schedule at the time of the accident he is not entitled to recover under the commercial policy." Brief for appellee at 1. Allstate relies on the first sentence of the uninsured motorists endorsement which begins with the phrase "For a covered auto." Allstate argues that the "restrictive language obviously limits defendant's risk to listed vehicles and is in keeping with the language in the rest of the policy." Brief for appellee at 3. Allstate concludes that "[t]here can be found no legal difference between the contractual language, 'You for any covered "auto" ' as found in the commercial policy, and 'For a covered "auto" ' 'You.' as found in the endorsement." *Id.*

Under Nebraska law, a court interpreting a contract, such as an insurance policy, must first determine, as a matter of law, whether the contract is ambiguous. *Cincinnati Ins. Co. v. Becker Warehouse, Inc.*, 262 Neb. 746, 635 N.W.2d 112 (2001). An appellate court reviewing an insurance policy must construe the policy as any other contract and give effect to the parties' intentions at the time the contract was made. See *id.* The contract must be construed as a whole, and if possible, effect must be given to every part thereof. See *Johnson Lakes Dev. v. Central Neb. Pub. Power*, 254 Neb. 418, 576 N.W.2d 806 (1998). When the terms of the contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as the ordinary or reasonable person would understand them. *Cincinnati Ins. Co., supra.* The language of an insurance policy should be read to avoid ambiguities, if possible, and the language should not be tortured to create them. *Id.* A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Tighe v. Combined Ins. Co. of America*, 261 Neb. 993, 628 N.W.2d 670 (2001). An ambiguous insurance policy will be construed in favor of the insured. *Id.*

Reisig's insurance policy defines an insured in its liability coverage provisions as "You for any covered 'auto.'" Regarding uninsured motorists coverage, the declarations sheet contains a notation referring to "Specifically Described 'Autos,'" and the uninsured motorists endorsement contains the phrase "For a covered 'auto'" in its first sentence. However, the uninsured motorists endorsement includes a statement at the very top of the first page which reads, in boldfaced, capital letters, **"THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY."** The endorsement then defines an insured as "You." In light of these provisions in the policy, it is not clear whether "You" stands alone or if it is somehow similarly restricted to "a covered 'auto'" as it is under the liability coverage. It is apparent that the definition of an insured as "You" in the uninsured motorists endorsement, when considered in combination with the endorsement's introductory phrase ("For a covered 'auto'"), its boldfaced warning (**"THIS**

**ENDORSEMENT CHANGES THE POLICY**"), the defini-
tion of an insured for purposes of liability coverage ("You for
any covered 'auto' "), and the declarations sheet's notation
(referring to "Specifically Described 'Autos' "), is a word which
"has, or is susceptible of, at least two reasonable but conflicting
interpretations or meanings." See *Tighe*, 261 Neb. at 999, 628
N.W.2d at 675. For this reason, we determine that the uninsured
motorists endorsement is ambiguous. Since an ambiguous insur-
ance policy is construed in favor of the insured, we will construe
the language of the insurance policy in favor of Reisig. See *id.*

Allstate asserts that the phrase "For a covered 'auto' " in the
first sentence of the uninsured motorists endorsement modifies
every term that follows, including the definition of an insured as
"You." It argues that the definition of an insured should effec-
tively be read as " 'For a covered "auto" ' . . . 'You.' " Brief for
appellee at 3. However, part B, paragraph 3, of the uninsured
motorists endorsement also defines an insured as "Anyone else
'occupying' a covered 'auto' or a temporary substitute for a cov-
ered 'auto.' " If the "covered 'auto' " limitation modifies the
entire endorsement as Allstate asserts, it would be unnecessary
to add the specific "covered 'auto' " limitation to paragraph 3. It
would, in effect, make the limitation incorporated within para-
graph 3 superfluous.

Similarly, the **"Exclusions"** in part C, paragraph 3a, of the
uninsured motorists endorsement would also be rendered super-
fluous under Allstate's interpretation. Part C, paragraph 3a,
excludes uninsured motorists coverage for bodily injuries sus-
tained by "You while 'occupying'. . . any vehicle owned by you
that is not a covered 'auto'. . . ." If, as Allstate asserts, the unin-
sured motorists endorsement provides coverage to the insured
"You" only in those instances involving a "covered auto," it
would be unnecessary for Allstate to include part C, paragraph
3a, specifically excluding coverage for the insured while in a
*noncovered auto* which the insured owns. Construing the con-
tract as a whole and in favor of Reisig, we find Allstate's inter-
pretation of the uninsured motorists endorsement unpersuasive.

This court is not alone in its determination. In *Bushey v.
Northern Assurance*, 362 Md. 626, 766 A.2d 598 (2001), the
Maryland Court of Appeals was presented with similar arguments

based on an uninsured motorists endorsement identical to the endorsement in Reisig's policy. In *Bushey*, the issue was whether the uninsured motorists endorsement provided coverage for the daughter of the named insured, a "family member" under part B, paragraph 2, who was not riding in a "covered auto" at the time she sustained bodily injury. The insurer in *Bushey* argued, as Allstate does in the present case, that the uninsured motorists endorsement restricted coverage to only those instances involving a "covered auto." In response, the court stated:

> [The insurer's] reading of the policy, under which the entire Endorsement is limited by its introduction to a "covered 'auto' " renders Part B, ¶ 3 redundant. If, regardless of relationship to the named insured, all claimants for [uninsured/underinsured] benefits must have been occupants of a " 'covered auto,' " it becomes totally unnecessary to specify in Part B, ¶ 3 that payment of those benefits for "anyone else," *i.e.,* other than the named insured or a "family" member of the named insured, depended on " 'occupying' a covered 'auto.' " Similarly, it would have been unnecessary to exclude from "[b]odily injury" in Part C, ¶ 3.b an injury sustained by a family member in "any vehicle owned by that family member that is not a covered 'auto,' " if occupying any non-covered auto, in and of itself, would exclude coverage."

*Id.* at 636, 766 A.2d at 603. The court found that the policy language of the uninsured motorists endorsement unambiguously provided coverage if the daughter fit within the policy's definition of a "family member." The court stated that "[t]he references to covered autos in the general structure of the policy on which [the insurer] relies at best create an ambiguity." *Id.*

In *Stoddard v Citizens Ins. Co. of America*, 249 Mich. App. 457, 643 N.W.2d 265 (2002), the Michigan Court of Appeals interpreted an uninsured motorists endorsement identical to the endorsement in Reisig's policy. As in *Bushey*, the issue in *Stoddard* was whether the uninsured motorists endorsement provided coverage for a "family member" under part B, paragraph 2, who was not riding in a "covered auto" at the time she sustained bodily injury. The appellant in *Stoddard* appealed from the lower court's order, which granted summary disposition in

favor of the insurer based on the finding that "the accident did not involve the vehicle covered under [the insurer's] policy." 249 Mich. App. at 459, 643 N.W.2d at 266.

The insurance policy in *Stoddard* mirrors Reisig's policy in that the same symbol, "07," which signifies "Specifically Described 'Autos,' " appears next to the uninsured motorists category on the declarations sheets of both policies. Even with such exclusions in the policy, the court in *Stoddard* stated, "Reading the definitions and exclusions to the uninsured motorist coverage of the policy, we find that it unambiguously provides coverage in circumstances beyond those involving the covered auto, including the accident at issue." *Id.* at 464, 643 N.W.2d at 269. The court then proceeded to interpret the uninsured motorists endorsement, stating:

> Under the definition of an "insured," the policy specifically limits liability for persons other than the named insured and family members to anyone " 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto.' " If the policy contemplated uninsured motorist liability only when the claim involved the covered auto, as defendant contends, it would be unnecessary to otherwise limit liability for guests to those occupying the covered auto. Defendant's reading of the policy renders part B, ¶ 3 redundant. There would be no reason to distinguish between situations involving the named insured and family members as opposed to other persons. Clearly, the policy was intended to follow the named insured and family members when they were not occupying the covered auto and sustained injury from an uninsured motorist.
>
> Likewise, if the uninsured motorist coverage applied only when the covered auto was involved there would be no need for the "owned vehicle exclusion" in part C, limiting liability in circumstances where the named insured or a family member was not occupying the covered automobile, but was in another *owned* vehicle that was not a covered auto under the policy.

*Id.* The court concluded that "[e]ven if the terms of the policy were considered ambiguous with regard to the covered auto limitation, the result is the same." *Id.* at 466, 643 N.W.2d at 270.

In addition, as noted previously, the first page of Reisig's uninsured motorists endorsement contains a heading in boldfaced, capital letters, stating, **"THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY."** The heading provides notice that the terms of the uninsured motorists coverage may differ from those in the original insurance policy. This policy language is consistent with Reisig's contention that the definition of an insured in the uninsured motorists endorsement is not the same as the definition of an insured for purposes of liability coverage. See, also, *Estate of Rosato v. Harleysville Mut. Ins.*, 328 Pa. Super. 278, 289 n.3, 476 A.2d 1328, 1334 n.3 (1984) (calling attention to heading's express statement, " 'THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY,' " in determining that uninsured motorists endorsement's definition of "insured" mandated coverage although liability coverage's definition of "insured" did not).

Concluding that the Allstate policy is ambiguous and therefore construing it in favor of Reisig, we determine as a matter of law that Reisig's insurance policy does not limit Reisig's uninsured motorists coverage solely to those instances involving "a covered 'auto.' " The district court thus erred in granting Allstate's motion for summary judgment and dismissing Reisig's appeal.

## CONCLUSION

For the foregoing reasons, we reverse the district court's judgment and remand the cause for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.