# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2990

_____

| | | |
|---|---|---|
| Marty Ginsburg, et al., | * | |
| | * | |
| Plaintiffs - Appellants, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| InBev NV/SA; Anheuser-Busch | * | |
| Companies, Inc.; Anheuser-Busch, Inc., | * | |
| | * | |
| Defendants - Appellees. | * | |

_____

Submitted: April 14, 2010
Filed: October 27, 2010 (Corrected November 1, 2010)

_____

Before WOLLMAN, BRIGHT, and LOKEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

Plaintiffs are Missouri beer consumers suing to enjoin the now-consummated acquisition of Anheuser-Busch Companies, Inc. ("A-B"), by InBev NV/SA ("InBev") on the ground that the transaction violated Section 7 of the Clayton Act, 15 U.S.C. § 18. Relying on the potential competition theories of § 7 liability, Plaintiffs allege that the merger threatens to reduce competition and increase beer prices in the United States because it eliminates InBev, the largest brewer and seller of imported beers, as an actual and a perceived potential competitor in the U.S. market. Having failed to obtain a preliminary injunction, Plaintiffs now seek divestiture as equitable relief

under Section 16 of the Clayton Act, 15 U.S.C. § 26. The district court[1] granted Defendants judgment on the pleadings. We affirm.

## I.

Before the merger, A-B, based in St. Louis, was the largest brewer in the United States, with a nearly fifty-percent market share, annual revenues of $16 billion, and 30,000 employees. InBev, created by the merger of Interbrew of Belgium and AmBev of Brazil, was the world's largest brewer, with annual revenues of $20 billion and 89,000 employees. Prior to acquiring A-B, InBev primarily competed in the U.S. market by selling imported brands brewed in other countries. In addition, an InBev subsidiary ("Labatt USA") had exclusive rights to brew and distribute in the U.S. a popular Canadian beer, Labatt, that another InBev subsidiary had the exclusive rights to brew and distribute in Canada. InBev had also owned a brewery in Latrobe, Pennsylvania, and one domestic brand, Rolling Rock, but it sold those assets in 2006. In late 2006, InBev and A-B agreed to make A-B the exclusive U.S. importer of several popular InBev brands.

InBev began its highly publicized efforts to acquire A-B in June 2008. When A-B rejected the initial offer, InBev sued in Delaware to remove the A-B board of directors, and A-B countered with a federal action in Missouri alleging deceptive takeover conduct. The companies reached an accord in July 2008 and announced that InBev would purchase A-B stock at $70 a share, for a total purchase price of $52 billion. As the subsequent procedural history is critical to an understanding of our decision, we summarize the significant events chronologically:

---

[1]The HONORABLE JEAN C. HAMILTON, United States District Judge for the Eastern District of Missouri.

September 10, 2008 -- Plaintiffs file their Complaint for Injunctive Relief seeking orders preliminarily and permanently "enjoining [D]efendants from consummating their acquisition."

October 6, 2008 -- Counsel for Defendants advise Plaintiffs that Defendants will turn over by October 17 "the Hart Scott Rodino documents that they have by then given to the [United States] Department of Justice,"[2] that "the transaction could be consummated . . . as early as November 12, 2008," and that Defendants would not agree to delay the closing.

October 17, 2008 -- InBev and A-B file Answers to the Complaint and turn over 400,000 pages of Hart-Scott-Rodino documents.

November 3, 2008 -- As directed by the court in an October 23 telephonic hearing, Plaintiffs file their motion for a preliminary injunction and supporting memorandum.

November 12, 2008 -- A-B shareholders approve the transaction.

November 14, 2008 -- The Department of Justice files in the United States District Court for the District of Columbia (D.D.C.) a Competitive Impact Statement and a Proposed Final Judgment in which InBev agrees to hold separate, and to divest if the Final Judgment is approved by the court, InBev's Labatt USA assets. See 73 Fed. Reg. 71,682-83 (Nov. 25, 2008) (explaining that, although InBev's overall U.S. market share was only two percent, the acquisition of A-B would substantially reduce competition in Buffalo, Rochester, and Syracuse, New York, because Labatt brand beers account for a significant portion of those local markets).

November 18, 2008 -- The district court denies Plaintiffs' motion for a preliminary injunction. The purchase transaction closes, and Defendants merge the operations of the two companies, subject to a

---

[2]The Hart-Scott-Rodino Act, 15 U.S.C. § 18a, required premerger notification and submission of relevant documents to the government.

Hold Separate Stipulation and Order regarding InBev's Labatt USA assets entered by D.D.C. pending approval of the Final Judgment.

November 20, 2008 -- Plaintiffs move for reconsideration of the denial order. December 17, 2008 -- The district court denies the motion for reconsideration.

December 30, 2008 -- The district court denies Plaintiffs' Motion to Hold Defendants' Assets Separate.

January 19, 2009 -- Plaintiffs appeal the three district court orders.

February 17, 2009 -- Defendants move for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, and to stay discovery.

February 26, 2009 -- Eighth Circuit dismisses Plaintiffs' appeals from the first two orders as untimely and summarily affirms denial of the Motion to Hold Defendants' Assets Separate. See Judgment, No. 09-1148 (8th Cir. Feb. 26, 2009).

March 11, 2009 -- Department of Justice moves for entry of Final Judgment by D.D.C. An independent, government-approved entity is identified that will purchase InBev's Labatt USA assets.

March 17, 2009 -- After denying Plaintiffs' motion to intervene, D.D.C. grants them leave to appear as amici curiae and schedules a hearing on the government's motion to approve the Proposed Final Judgment.

April 16-17, 2009 -- Plaintiffs appear at D.D.C. motion hearing and file supplemental exhibits opposing the merger.

August 3, 2009 -- The district court grants Defendants' motion for judgment on the pleadings and denies Plaintiffs' request for leave to amend.

August 11, 2009 -- Applying the standard of review mandated by the Tunney Act, 15 U.S.C. § 16(e)(1), D.D.C. rejects Plaintiffs' effort to block the entire merger and approves the consent decree and Final Judgment proposed by the government. <u>United States v. InBev N.V./S.A.</u>, No. 08-1965.

In its November 18, 2008, order denying Plaintiffs' motion for a preliminary injunction, the district court concluded (i) that the substantial Hart-Scott-Rodino documentary record "demonstrates that it is overwhelmingly likely that Plaintiffs cannot succeed on the merits" because InBev's actions demonstrate that it does not intend to enter the U.S. beer market *de novo*, and because InBev's presence as a perceived potential competitor does not affect A-B's competitive behavior; and (ii) that Plaintiffs provided no support for their speculative claim of antitrust injury, namely, that the merger would result in increased beer prices even though it would not increase concentration in the U.S. market.

In its August 3, 2009, order that is the subject of this appeal, the district court granted judgment on the pleadings, concluding that Plaintiffs' Complaint did not contain sufficient facts supporting their conclusory allegations that InBev intended to enter the U.S. market *de novo*, or that any rational market participant had tempered its pricing activities in the existing market because it viewed InBev as a potential *de novo* entrant, allegations at odds with InBev's sale of its Pennsylvania brewery and Rolling Rock assets, its long-term agreement with A-B for distribution of InBev's imported brands, and its lack of assets and relationships needed for effective *de novo* entry. On appeal, Plaintiffs argue that their lengthy Complaint adequately pleaded claims under the actual and perceived potential competition theories of § 7 liability.

## II.

Section 7 of the Clayton Act prohibits any acquisition affecting commerce whose effect "may be substantially to lessen competition, or to tend to create a monopoly." In Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557-58 (2007), noting "the unusually high cost of discovery in antitrust cases," the Supreme Court held that, to survive a motion to dismiss, a complaint alleging an agreement in violation of § 1 of the Sherman Act, 15 U.S.C. § 1, must allege specific facts "plausibly suggesting (not merely consistent with) agreement" in restraint of trade. This landmark decision was later extended to other causes of action in Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

Plaintiffs argue the district court erred in granting judgment on the pleadings, relying on the breadth of the § 7 prohibition and the plausibility of alleging that the world's largest brewer, having a minimal present share of the U.S. beer market, is both an actual and a perceived potential competitor in that market. This is a difficult procedural issue, made more so by the unusual posture in which it reaches us.[3] We focus instead on an independent reason why the district court did not err in dismissing the Complaint at this stage of the proceedings.

---

[3]As a general rule, a Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard as a 12(b)(6) motion to dismiss. See Clemons v. Crawford, 585 F.3d 1119, 1124 (8th Cir. 2009), cert. denied, 130 S. Ct. 3507 (2010). But what effect on this standard, if any, does the fact that Defendants' Rule 12(c) motion was timely made after denial of Plaintiffs' motion for a preliminary injunction -- an exercise that generated a record outside the pleadings of some 400,000 document pages? The parties cite no case addressing this unusual procedural issue.

**III.**

Plaintiffs are beer consumers who purchase beer from taverns and retailers, not directly from breweries. As indirect purchasers, they may not sue for damages under the Clayton Act. Illinois Brick Co. v. Illinois, 431 U.S. 720, 734-35 (1977). But indirect purchasers are private parties who may sue for injunctive relief under § 16 of the Act. See Campos v. Ticketmaster Corp., 140 F.3d 1166, 1172 (8th Cir. 1998), cert. denied, 525 U.S. 1102 (1999). Here, Plaintiffs initially sued to enjoin the merger. As the acquisition has now occurred, they conceded at oral argument that the *only* equitable relief to which they would be entitled, if they ultimately prevailed on their potential competition theories, is divestiture. As Plaintiffs note, divestiture is a remedy that is available to private plaintiffs for a violation of § 7 "when appropriate in light of equitable principles." California v. American Stores Co., 495 U.S. 271, 285 (1990). However, the Supreme Court cautioned, the remedy though available may not always be appropriate. Private plaintiffs must prove antitrust injury, and "equitable defenses such as laches . . . may protect consummated transactions from belated attacks by private parties . . . ." Id. at 296. Here, when we consider both the liability and remedy issues that would be addressed in a trial where Plaintiffs were able to prove a potential competition violation of § 7, we conclude that divestiture, the only remedy they seek, would not be appropriate as a matter of law.

The potential competition theories of § 7 address mergers between firms that are not actual competitors because they produce different products or operate in different geographic markets. Thus, their merger does not reduce the number of competitors or raise concentration in the markets of either. However, their merger *may* reduce competition in two ways -- because the threat of new entry by the acquiring firm induced competitors in the acquired firm's market to perform more competitively ("perceived potential competition"), or because the merger forecloses the acquiring firm's future *de novo* entry into the acquired firm's market ("actual potential competition"). See 5 P. Areeda & H. Hovenkamp, Antitrust Law ¶ 1121a

-7-

(3d ed. 2009). Nearly forty years ago, the Supreme Court identified these as plausible theories of § 7 liability but left their parameters undefined; we then upheld the Federal Trade Commission's application of the theories five years later. United States v. Marine Bancorp., Inc., 418 U.S. 602, 623-25 (1974); United States v. Falstaff Brewing Corp., 410 U.S. 526, 531-37 (1973); Yamaha Motor Co. v. F.T.C., 657 F.2d 971, 977-78 (8th Cir. 1981), cert. denied, 456 U.S. 915 (1982). Neither court has applied the theories since. Whatever else may be said, proof of liability under either theory is certain to entail expensive, uncertain litigation, even if, as here, the acquiring firm is rich and powerful and the acquired firm's market highly concentrated. See 5 Areeda & Hovenkamp ¶¶ 1121-1134.

Assuming Plaintiffs proved at trial that InBev was so significant a perceived or actual potential competitor that the effect of its acquisition of A-B "may be substantially to lessen competition," the trial court would turn to the question of remedy. When the federal government sues to enforce § 7 in the public interest, divestiture has been called the "most effective [] of antitrust remedies" but also the "most drastic." United States v. E.I. du Pont de Nemours & Co., 366 U.S. 316, 326 (1961). As Plaintiffs are private, indirect purchasers rather than a federal antitrust enforcement agency, divestiture's "far-reaching effects put it at the least accessible end of a spectrum of injunctive relief." Antoine Garabet, M.D., Inc. v. Autonomous Tech. Corp., 116 F. Supp. 2d 1159, 1172 (C.D. Cal. 2000); see 2A Areeda & Hovenkamp ¶ 326, at 24-25. Never has a federal court ordered divestiture at the request of a private party who was neither a customer nor a competitor of the merging parties. Garabet, 116 F. Supp. 2d at 1173 n.13; Glendora v. Gannett Co., 858 F. Supp. 369, 372 (S.D.N.Y. 1994), cert. denied, 514 U.S. 1054 (1995). Here, the Department of Justice, after reviewing 400,000 pages of Hart-Scott-Rodino documents, only challenged the transaction in local geographic markets where there was significant actual competition between InBev and A-B. When InBev agreed to preserve that competition by selling its Labatt USA assets to an independent firm, the government

did not oppose consummation of the merger, despite the presence of obvious potential competition issues.

In most litigated § 7 cases, divestiture has been considered the most important antitrust remedy because "[i]t is simple, relatively easy to administer, and sure." American Stores, 495 U.S. at 281, quoting du Pont, 366 U.S. at 331. But this is only true before the transaction is consummated, or if stock or discrete tangible assets are all that later need be divested. In Falstaff, for example, defendants agreed to operate the acquired firm separately until the government's § 7 challenge was litigated. 410 U.S. at 530. In Yamaha, divestiture was accomplished by the § 7 offender selling its 38% stock interest in an unrelated Japanese company. 657 F.2d at 982. In Marine Bancorp., relief enjoining a proposed bank acquisition was denied. 418 U.S. at 641-42. And in California Stores, the two firms merged, but a preliminary injunction was entered before "their business operations" were combined. 495 U.S. at 276.

In this case, Plaintiffs waited nearly two months after A-B and InBev announced their agreement to merge before filing this lawsuit. Defendants advised that the transaction could close as early as November 12, yet Plaintiffs did not file a motion for preliminary injunction until November 3, and then only because the court imposed this deadline. When dealing with transactions of this nature, these were inexcusable delays. See American Stores, 495 U.S. at 298 (Kennedy, J., concurring). Then, having been furnished the same 400,000 pages of Hart-Scott-Rodino documents that prompted the government *not* to pursue potential competition theories, Plaintiffs offered no other proof in support of their motion for preliminary injunction. Concluding on this substantial record that Plaintiffs' § 7 potential competition claims were "purely speculative," the district court denied their request for preliminary injunctive relief. The transaction then closed on November 18, 2008, with no

opposition by the government's antitrust enforcers.  A-B and InBev have combined their sizeable operations and today function as one corporate entity.

In some cases, lack of diligence in seeking § 7 relief has completely barred the equitable remedy of divestiture.  See Midwestern Mach. Co. v. Northwest Airlines, Inc., 392 F.3d 265, 277 (8th Cir. 2004); Garabet, 116 F. Supp. 2d at 1172-73.  But even if Plaintiffs were not so dilatory as to trigger the defense of laches, their failure to obtain a preliminary injunction that would make the divestiture remedy "easy to administer and sure" must be taken into account in fashioning an appropriate remedy some years later.

Fashioning appropriate equitable antitrust relief requires that courts balance the benefit to competition against the hardship or competitive disadvantage the remedy may cause.[4]  Here, to prevail on the merits, Plaintiffs must not only prove that InBev was an actual or perceived potential competitor, the only issue addressed in their briefs, but also that they suffered antitrust injury -- "threatened loss or damage of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful."  Cargill, Inc. v. Monfort of Colo., Inc., 479 U.S. 104, 113 (1986) (quotation omitted).  Plaintiffs allege the injury of higher retail beer prices.  That is a type of antitrust injury, but the Department of Justice Competitive Impact Statement stated that, because beer is sold to consumers through a three-tier distribution system throughout the United States, "[b]rewers develop beer pricing and promotion strategies on a 'local' market basis, based on an assessment of local

---

[4]"Courts must exercise care to ensure that the cost of correcting the market failure does not exceed the anticompetitive injury visited on consumers."  E. Thomas Sullivan, The Jurisprudence of Antitrust Divestiture:  The Path Less Traveled, 86 Minn. L. Rev. 565, 613 (2002).

competitive conditions . . . . ” 73 Fed. Reg. at 71,683.  This means that any antitrust injury Plaintiffs could prove would be both speculative and localized.

By contrast, the hardship and competitive disadvantage resulting from forced divestiture would be both dramatic and certain.  InBev acquired A-B for $52 billion nearly two years ago and has combined the assets and operations of the two very large firms.  While the price benefit beer drinkers would gain from divestiture is unclear, a court decree splitting up the combined entities would impose obvious hardship on the employees and distributors of former A-B and might well damage competition and consumers by crippling the operations of the largest domestic producer of immensely popular products.  In these circumstances, as in Garabet, 116 F. Supp. 2d at 1173, the remedial equities balance overwhelmingly in favor of denying this remedy.  Accord NBO Indus. Treadway Cos. v. Brunswick Corp., 523 F.2d 262, 279 (3d Cir. 1975), aff’d sub nom. Brunswick Corp. v. Pueblo Bowl-o-Mat, Inc., 429 U.S. 477 (1977).  “Hypothetical anticompetitive conduct, speculative monopoly power, and remote injuries do not merit the extreme remedy of divestiture.”  Broadcom Corp. v. Qualcomm Inc., 501 F.3d 297, 322 (3d Cir. 2007).  Accordingly, Plaintiffs’ only available remedy is barred as a matter of law, and judgment dismissing their Complaint at this stage of the litigation was appropriate.

## IV.

Given our resolution of the primary issue, the additional issues Plaintiffs raise on appeal require little discussion.  First, Plaintiffs argue that the district court erred by improperly considering materials outside the pleadings and failing to treat Defendants’ Rule 12(c) motion as one for summary judgment, as Rule 12(d) requires.  The issue is not free from doubt.  See Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999).  However, even if it is Rule 12 error for us to consider

portions of the substantial preliminary injunction record without converting the Rule 12(c) motion to one for summary judgment, no amount of additional Rule 56 procedure would cure the fatal flaw in Plaintiffs' prayer for the divestiture remedy. Accordingly, any error was harmless. See Country Club Estates, L.L.C. v. Town of Loma Linda, 213 F.3d 1001, 1005 (8th Cir. 2000).

Second, Plaintiffs argue the district court abused its discretion by barring them from deposing the chief executive officers of InBev and A-B before granting Defendants' Rule 12(c) motion. As Plaintiffs fail to allege specific prejudice from this ruling, and as these depositions could not possibly affect our conclusion that divestiture is not an appropriate remedy, any error again was harmless. Finally, Plaintiffs argue the district court abused its discretion in denying their request, first made in their reply to the motion for judgment on the pleadings, that they be given leave to amend their Complaint. Plaintiffs never submitted a proposed amended complaint nor explained what amendments would be made, which is reason enough to uphold the denial. See In re 2007 Novastar Fin., Inc. Sec. Litig., 579 F.3d 878, 884-85 (8th Cir. 2009). In any event, as Plaintiffs concede that the only remedy they would seek in an amended complaint would be divestiture, any amendment would be futile.

**Conclusion.**

As the only equitable remedy Plaintiffs seek would not be appropriate, granting the relief they request on appeal would result only in extensive discovery and an unsuccessful trial that would increase the cost of brewing and selling the beers Plaintiffs drink. Increased costs inevitably lead to higher prices, the very economic injury Plaintiffs sued to prevent. We decline their request for a Pyrrhic procedural

victory.  When the issue is equitable remedies, procedural perfection must yield to practical reality.

The judgment of the district court is affirmed.

_____