**MEYER NATURAL FOODS, LLC and Crum & Forster Specialty Insurance Company, Plaintiffs,**

v.

**LIBERTY MUTUAL FIRE INSURANCE COMPANY, Defendant.**

**8:15-CV-3116**

United States District Court, D. Nebraska.

Signed 11/22/2016

Thomas A. Grennan, Gross, Welch Law Firm, Omaha, NE, for Plaintiffs.

Bruce A. Moothart, Seyferth, Blumenthal Law Firm, Kansas City, MO, for Defendant.

## MEMORANDUM AND ORDER

John M. Gerrard, United States District Judge

This matter is before the Court on the defendant's motion for judgment on the pleadings (filing 27). For the reasons discussed below, the defendant's motion will be granted.

## BACKGROUND

The plaintiffs' allegations are briefly summarized as follows. Meyer Natural

Foods, LLC entered into a processing agreement with Greater Omaha Packing Company, Inc. for the purchase of beef products. Filing 1-1 at 3. On or around April 27, 2011, Omaha Packing supplied Meyer Foods with beef that was contaminated with Escherichia coli ("E. coli"). Meyer disposed of the beef, resulting in damages of $1,395,227. Filing 1-1 at 3.

The agreement between Meyer Foods and Omaha Packing included a provision whereby Omaha Packing agreed to maintain insurance on the value of all Meyer Foods' property in its possession, and to name Meyer Foods as an additional insured on the plan. Filing 1-1 at 7. To fulfill its obligation, Omaha Packing obtained an insurance policy with the defendant, Liberty Mutual Fire Insurance Company.[1] Pursuant to the policy, the defendant agreed to insure Omaha Packing against direct physical loss or damage to certain "covered property." Covered property included the "personal property of others," which the plan defined as tangible things that are,

1. Sold by [Omaha Packing] that [Omaha Packing] agreed, prior to loss, to insure for the account of the purchaser during delivery;

2. In [Omaha Packing's] custody which [Omaha Packing] agreed, prior to loss, to insure; or

3. In [Omaha Packing's] care, custody or control, and for which [Omaha Packing is] legally liable, but only to the extent of [Omaha Packing's] insurable interest therein.

Filing 1-1 at 9.

Meyer Foods contends that its beef was contaminated while in Omaha Packing's possession, and is therefore covered under the "personal property of others" provision of the insurance policy. Filing 1-1 at 8. It seeks a declaration that Liberty Mutual, pursuant to the policy, owes on the claim in the amount of $1,395,227. Filing 1-1 at 10.

## STANDARD OF REVIEW

As a general rule, a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings is reviewed under the same standard as a Fed. R. Civ. P. 12(b)(6) motion to dismiss. *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1233 n.3 (8th Cir. 2010). A Rule 12(c) motion requires the Court to view all facts pleaded by the nonmoving party as true and grant all reasonable inferences in favor of that party. *Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir. 2008). Judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law. *Ashley Cty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009); *Poehl*, 528 F.3d at 1096.

A complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The complaint need not contain detailed factual allegations, but must provide more than labels and conclusions; and a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). For the purposes of a motion to dismiss a court must take all of the factual allegations in the

---

**1.** It is important to note that Omaha Packing is not a party to this dispute. Further, according to the complaint, "Plaintiff [Crum & Forster Specialty Insurance Company] is joined in this lawsuit for the sole purpose of protecting its subrogation claim in the amount of $894,998.00" Filing 1-1 at 2.

complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Id.*

And to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must also contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief. *Id.* at 679, 129 S.Ct. 1937.

Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id.* The facts alleged must raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiff's claim. *See Twombly,* 550 U.S. at 545, 127 S.Ct. 1955. The court must assume the truth of the plaintiff's factual allegations, and a well-pleaded complaint may proceed, even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely. *Id.* at 556, 127 S.Ct. 1955.

## DISCUSSION

As a preliminary matter, the plaintiffs argue that a motion under Fed. R. Civ. P. 12(c) may not be granted where, as here, a defendant denies substantive factual allegations contained in a plaintiff's complaint. Filing 34 at 2-4. To support this argument, the plaintiffs cite case law for the proposition that a motion for judgment on the pleadings is appropriate only where "all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain[.]" Filing 34 at 3. Thus, because the defendant in this case has denied certain factual allegations in its answer, the plaintiffs suggest that the Court cannot, as a matter of law, grant the underlying motion.

■ But the plaintiffs misinterpret the governing standards. While it is true that the moving party in a Rule 12(c) motion must "clearly establish[ ] that no material issue of fact remains to be resolved," it need not—as the plaintiffs suggest—admit or concede all factual allegations to satisfy this burden. *Iowa Beef Processors, Inc. v. Amalgamated Meat Cutters,* 627 F.2d 853, 855 (8th Cir. 1980). Rather, in evaluating a Rule 12(c) motion, the Court must view all facts pleaded by the nonmoving party as true. *Poehl,* 528 F.3d at 1096. And if the moving party has previously denied the validity of those facts, such denials are "assumed to be false" or are otherwise without effect, for the purposes of the motion. *Rimmer v. Colt Indus. Operating Corp.,* 656 F.2d 323, 326 (8th Cir. 1981). Accordingly, the defendant's denials in a previously filed responsive pleading are of no concern to the Court at this stage of the proceedings.

### 1. POLICY EXCLUSIONS

The defendant argues that the insurance policy at issue does not cover the type of damage at issue—that is, damage resulting from E. coli. To support this argument, the defendant points to five exclusions in the operative policy that, it claims, "plainly apply to preclude coverage for Plaintiffs' alleged losses." Filing 28 at 4. Those exclusions provide:

A. GROUP A EXCLUSIONS

We will not pay for loss or damage caused by or resulting from any of the following, regardless of any other cause or event, including a peril in-

sured against, that contribute to the loss at the same time or in any other sequence:

. . .

4. Fungus, bacteria, wet or dry rot, decay.

. . .

5. Pollution.

. . .

    10. The actual or suspected presence or threat of any virus, organism or like substance that is capable of inducing disease, illness, physical distress or death, whether infectious or otherwise, including but not limited to any epidemic, pandemic, influenza, plague, SARS, or Avian Flu.

. . .

### B. GROUP B EXCLUSIONS

We will not pay for loss or damage caused by or resulting from any of the following:

. . .

5. Manufacturing or processing operations, which result in damage to stock or materials while the stock or materials are being processed, manufactured, worked on or tested.

. . .

7. Loss attributable to:

. . .

    h.    Contamination, shrinkage, change in taste, texture, finish or color.

Filing 1-1 at 40-42 (emphasis omitted). Because the underlying claim arises out of the contamination of meat, the defendant contends that the application of any one of these exclusions—standing alone—is sufficient to deny coverage on the claim.

The plaintiffs point out that none of the policy exclusions relied upon by the defendant expressly excludes coverage for E. coli. Thus, they contend that the applicability of the exclusions, if at all, turns on an inherently factual inquiry regarding the "various molecules, materials, chemicals and/or qualities" of E. coli. *See* filing 34 at 7. This sort of inquiry or analysis is not permitted at this stage of the proceedings, they argue, because it would require judicial notice of scientific facts that are not generally known by the public, and would otherwise raise contested issues of fact that cannot be decided on a motion for judgment on the pleadings. *See* filing 34 at 5-14; *see also Poehl*, 528 F.3d at 1096 (a grant of judgment on the pleadings is appropriate only "where no material issue of fact remains") (internal citations omitted).

But resolution of the defendant's motion does not, as the plaintiffs suggest, require judicial notice of complex facts. Rather, the Court finds that the plaintiffs' claim is foreclosed by the plain and ordinary language of the "contamination" exclusion as set forth in the operative policy.

    (a)   Contamination Exclusion

The insurance policy's "contamination" provision excludes from coverage, "Loss attributable to . . . Contamination, shrinkage, change in taste, texture, finish or color." Filing 28 at 4-5; filing 1-1 at 42. Although the policy does not expressly define "contamination," the defendant encourages the Court to apply an ordinary meaning interpretation to the term, noting that, in the context of the underlying claim, "there can be no reasonable dispute . . . about the meaning of that term." Filing 28 at 5.

The plaintiffs expressly allege in the complaint that the beef was "contaminated with E. coli." Filing 1-1 at 3. However, they contend that E. coli does not constitute "contamination" as that term is used in the exclusionary provision of the insurance policy. Filing 34 at n.1. Relatedly, the plaintiffs point to case law which suggests that the term "contamination," if not expressly defined in the policy, may be over-

ly broad or ambiguous such that its interpretation is an issue of fact for the jury. *See* filing 34 at 12-13 (citing *Parks Real Estate Purchasing Grp. v. St. Paul Fire and Marine Ins. Co.*, 472 F.3d 33, 47–48 (2d Cir. 2006); *Auto–Owners Ins. Co. v. Hanson*, 588 N.W.2d 777 (Minn. App. 1999)). In this way, the plaintiffs imply that issues of material fact remain as to whether the "contamination exclusion" as set forth in the operative insurance policy encompasses loss attributable to E. coli.

▮ Under Nebraska law, an insurance policy is a contract, and therefore typical rules of contractual construction apply. *Winfield v. CIGNA Companies*, 248 Neb. 24, 532 N.W.2d 284, 286 (1995). Accordingly, a court interpreting an insurance policy "must first determine, as a matter of law, whether the contract is ambiguous." *Reisig v. Allstate Ins. Co.*, 264 Neb. 74, 645 N.W.2d 544, 550 (2002). If the policy is ambiguous, it "will be construed in favor of the insured." *Id.* Conversely, if the terms of the policy are clear, they are to be accorded their plain and ordinary meaning. *Farm Bureau Ins. Co. v. Witte*, 256 Neb. 919, 594 N.W.2d 574, 581–82 (1999). As noted, whether a term in an insurance policy is ambiguous, and therefore in need of construction, is a question of law. *Kast v. American–Amicable Life Ins. Co.*, 251 Neb. 698, 559 N.W.2d 460, 464 (1997).

▮ Against this backdrop, the Court finds that the defendant is entitled to judgment as a matter of law. Specifically, the Court finds that the term "contamination" is not ambiguous as it appears in the "contamination exclusion" of the policy, and as it is applied to the facts alleged. Indeed, the word "contaminate" means "to render unfit for use by the introduction of unwholesome or undesirable elements." Webster's Third New International Dictionary 491 (1993). The presence of E. coli in the beef clearly rendered the food unfit for

consumption, and it therefore meets the plain and ordinary meaning of the word—a conclusion that any reasonable person would reach on the facts presented.

This is not to say, of course, that the term "contaminate" or "contamination" is, in every instance, unambiguous. To this end, the Court recognizes that, as reflected in the cases relied upon by the plaintiffs, there may be situations in which the context of the claim, or the specific terms of the policy, would dictate a different outcome. For example, some courts have recognized that a "pollution exclusion" that includes in its definition "contaminants or irritants" may, depending on the facts of the claim, be "boundless" in application, and thus ambiguous in nature. *See, Sargent Constr. Co. v. State Auto Ins. Co.*, 23 F.3d 1324, 1327 (8th Cir. 1994); *Pipefitters Welfare Educational Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037, 1043 (7th Cir. 1992). Similarly, some courts interpret "contamination" narrowly when it is grouped with other terms that, to a reasonable policyholder, appear to exclude only environmental-type harms. *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.*, 132 F.3d 526, 530–31 (9th Cir. 1997) (compiling cases).

But the Court need not decide whether E. coli falls within the policy's "pollution exclusion," or whether that exclusion is, for the purposes of this claim, ambiguous. Indeed, it is the "contamination exclusion"— not the "pollution exclusion"—which governs the outcome of this dispute. And under the plain and ordinary meaning of the contamination exclusion, it clearly applies to these facts.

(b)   Other Exclusions

As noted above, the defendant contends that damage resulting from E. coli falls within five separate exclusions within the policy—any one of which is sufficient to foreclose the claim. Finding that the "con-

tamination exclusion" applies, the Court need not address the applicability, if at all, of the remaining exclusions to the facts of this claim.

### 2. CONCLUSION

In sum, the presence of E. coli in the beef products rendered the food unfit for consumption, and therefore meets the ordinary, unambiguous definition of "contamination." Accordingly,

IT IS ORDERED:

1. The defendant's motion (filing 27) is granted.

2. The plaintiffs' claim is dismissed.

3. A separate judgment will be entered in favor of the defendant.