# United States Court of Appeals
## For the Eighth Circuit

_____

## No. 16-4086

_____

In re: Pre -Filled Propane Tank Antitrust Litigation

-------------------------------

Mario Ortiz; Stephen Morrison; Steven Tseffos

*Plaintiffs - Appellants*

Sean Venezia; Michael S. Harvey; Gregory Ludvigsen; Arthur Hull; Alan
Rockwell; James Halgerson; Thomas R. Clark; Bryce Mander; Alex Chernavsky;
Robert Orr; Eric Blum; Paul Toomey

*Plaintiffs*

William Vincent

*Plaintiff - Appellant*

David McNally; Steven Lutrell; Ken Cramer

*Plaintiffs*

Kevin Dougherty

*Plaintiff - Appellant*

James Ristow; Daniel Kelleher; Richard Pedrick; Dallas May, Jr.; Tom Roberts

*Plaintiff*s

John Gilbert; Mark Stevens; Richard Paradowski

*Plaintiffs - Appellants*

Hanz De Perio

*Plaintiff*

Josh Bartholow

*Plaintiff - Appellant*

Joseph M. Haala; Scott Zuehlke; Wesley H. McCullough; Richard Sanchez; MaryLou Breed; Jerry Marshall

*Plaintiff*s

Troy Winters; Thomas Gane; Gary Snow; Nicholas Pulli; Allan Disbrow

*Plaintiffs - Appellants*

v.

Ferrellgas Partners, L.P. a limited partnership; Ferrellgas, L.P. a limited partnership, doing business as Blue Rhino; AmeriGas Propane, L.P. a limited partnership, doing business as AmeriGas Cylinder Exchange; UGI Corporation, a corporation; AmeriGas Propane, Inc.; AmeriGas Partners, L.P.

*Defendants - Appellees*

Robert Orr; Eric Blum; Paul Toomey; William Vincent; David McNally; Steven Lutrell; Ken Cramer; Kevin Dougherty; James Ristow; Daniel Kelleher; Richard Pedrick; Dallas May, Jr.; Tom Roberts; John Gilbert; Mark Stevens; Richard Paradowski; Hanz De Perio; Josh Bartholow; Joseph M. Haala; Scott Zuchlke; Wesley H. McCullough; Richard Sanchez; MaryLou Breed; Jerry Marshall

*Plaintiffs - Appellants*

v.

Ferrellgas Partners, L.P.; Ferrellgas, L.P.; AmeriGas Partners, L.P.

*Defendants - Appellees*
_____

Appeals from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: February 15, 2018
Filed: June 22, 2018
_____

Before LOKEN, BENTON, and ERICKSON, Circuit Judges.
_____

BENTON, Circuit Judge.

The plaintiffs sued Ferrellgas Partners, L.P., Ferrellgas, L.P. (collectively "Ferrellgas"), and AmeriGas Partners, L.P., alleging antitrust violations and seeking relief under federal and state law. The district court granted summary judgment for

Defendants. Having jurisdiction under 28 U.S.C. § 1291, this court affirms in part and remands in part.

## I.

Ferrellgas[1] and AmeriGas are the nation's largest distributors of pre-filled propane exchange tanks, which come in a standard size. Before 2008, Defendants filled the tanks with 17 pounds of propane. In 2008, due to rising propane prices, Defendants reduced the amount in each tank from 17 to 15 pounds, but maintained the same price. According to the plaintiffs, this "effectively rais[ed] the price charged for propane in those tanks."

In 2009, a group of plaintiffs—indirect purchasers who bought tanks from retailers—filed a class action alleging Defendants conspired to reduce the amount of propane in the tanks while maintaining the price, in violation of Section 1 of the Sherman Act and state antitrust and consumer protection laws. In 2010, the plaintiffs and AmeriGas settled. *See In re Pre-Filled Propane Tank Mktg. & Sales Practices Litig.*, 2010 WL 2008837 (W.D. Mo. May 19, 2010) (granting preliminary approval of first amended settlement agreement). Also in 2010, those plaintiffs again sued Ferrellgas, settling in 2012. (This court refers to those suits collectively as "*Propane I*.") On March 27, 2014, the Federal Trade Commission issued a complaint against Defendants—settled on January 7, 2015, by consent orders—for conspiring to artificially inflate tank prices. *See In re Ferrellgas Partners, L.P., et al.*, 2014 WL 1396496 (Mar. 27, 2014).

On May 30, 2014, another group of indirect purchasers ("the *Ortiz* plaintiffs") brought a class action against Defendants, alleging: "Despite their settlements, Defendants continued to conspire, and rather than resuming competition, maintained their illegally agreed-upon fill levels, preserving the unlawfully inflated prices that

---

[1] Ferrellgas does business as "Blue Rhino."

their conspiracy had produced," and "Defendants continued to have regular communications regarding pricing, fill levels, and market allocation until at least late 2010." They seek injunctive relief and disgorgement for violations of Section 1 of the Sherman Act. They also seek damages under the antitrust laws of 23 states and the District of Columbia—all with statutes allowing indirect-purchaser suits for state-antitrust damages despite *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), which bars those suits for federal-antitrust damages.

The *Ortiz* class action became part of a multidistrict proceeding that included a class action with similar allegations by direct purchasers (who bought tanks directly from Defendants for resale). The direct-purchaser suit seeks federal-antitrust damages, which the district court dismissed as time-barred. The district court explained (1) the statute of limitations accrued on August 1, 2008, the latest "all Defendants began selling fifteen pound tanks"; and (2) new purchases of tanks after that date did not restart the statute of limitations. ***In re Pre-Filled Propane Tank Antitrust Litig.***, 2015 WL 12791756, at *3 (W.D. Mo. July 2, 2015). This court—en banc—reversed, holding that "'each sale to the plaintiff[s]' in a price-fixing conspiracy 'starts the statutory period running again'" and is an "overt act, inflicting new and accumulating injury." ***In re Pre-Filled Propane Tank Antitrust Litig.***, 860 F.3d 1059, 1067-68 (8th Cir. 2017) (en banc) ("***Propane En Banc***"), *cert. denied*, 138 S. Ct. 647 (2018), *quoting* ***Klehr v. A.O. Smith Corp.***, 521 U.S. 179, 189 (1997).

Before this court issued *Propane En Banc*, the district court made several rulings in *Ortiz*. It dismissed as time-barred the indirect purchasers' state-law-damages claims. The district court ruled that, like direct purchases, new indirect purchases did not restart the statute of limitations. For the same reason, the district court dismissed the indirect purchasers' federal-disgorgement claim. But it allowed the federal-injunctive claim to proceed.

To address the statute of limitations, the *Ortiz* plaintiffs moved for leave to amend to add three new subclasses asserting damages: (1) a six-year statute-of-

limitations subclass, for violations of Maine, Vermont, and Wisconsin law; (2) a new-purchaser subclass, for violations of Kansas antitrust law; and (3) a new-purchaser subclass, for violations of the laws of "*Illinois Brick* repealer states." The new-purchaser subclasses included individuals who bought propane tanks for the first time after March 27, 2011. The *Ortiz* plaintiffs also proposed another federal-disgorgement claim.

The district court ruled that the amendments to add the disgorgement claim and the new-purchaser subclasses would be futile because the claims are time-barred. According to the district court, first-time purchases after March 27, 2011, are irrelevant because the statute of limitations accrued in August 2008, and—as it previously concluded—new purchases did not restart the clock. The district court did, however, rule that the six-year statute-of-limitations subclass raised timely claims. Filed on October 16, 2015, the *Ortiz* amended complaint retains the federal-injunctive claim, in addition to asserting the six-year statute-of-limitations subclass's state-law-damages claim.

The district court later dismissed the federal-injunctive claim under Fed. R. Civ. P. 12(c), concluding (1) the indirect purchasers lack standing, and (2) the doctrine of laches bars the claim. Meanwhile, on July 21, 2016, another group of indirect purchasers ("the *Orr* plaintiffs") not named in the *Ortiz* complaint sued Defendants. The *Orr* complaint—consolidated into the same multidistrict proceeding with *Ortiz*—includes the federal-disgorgement claim and the new-purchaser subclasses that the *Ortiz* plaintiffs tried to add to their complaint, along with a six-year statute-of-limitations subclass damages claim and a federal-injunctive claim.

Ferrellgas moved for summary judgment against the *Ortiz* plaintiffs, arguing the *Propane I* release barred the claims of the six-year statute-of-limitations subclass. The release says:

[T]he Releasing Persons hereby fully, finally, and forever release, relinquish, and discharge the Released Persons from any and all liabilities, claims, rights, suits, and causes of action, of any kind whatsoever, that the Releasing Persons may have or may have had . . . whether known or unknown, suspected or unsuspected, threatened, asserted, or unasserted . . . that were or could have been sought or alleged in the Litigation related to the filling, purchase, sale or exchange of Ferrellgas's 20-pound propane gas cylinders.

The district court ruled that the release "does not contain the clear language necessary to constitute a release of future claims. Thus, the release provision only bars assertion of claims that had accrued at the time of the release." *In re Pre-Filled Propane Tank Antitrust Litig.*, 2016 WL 6963058, at *4 (W.D. Mo. Sept. 2, 2016) (internal citation omitted). The plaintiffs argued that "their current claims are for post *In re Propane I* purchases of propane tanks, and that those purchases could not have accrued into claims until after the purchases were made, and thus, after the release." *Id.*

The district disagreed, granting Ferrellgas summary judgment, again ruling that the claims accrued only once—"in August 2008"—and the limitations period did not restart upon new purchases. The district court also granted summary judgment for AmeriGas on the basis of standing. Finally, the district court dismissed the *Orr* complaint based on its rulings in *Ortiz*.

The indirect purchasers in *Ortiz* and *Orr* appeal. This court reviews the issues here de novo. *Propane En Banc*, 860 F.3d at 1063; *Montin v. Moore*, 846 F.3d 289, 293 (8th Cir. 2017); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).

II.

Alleging a Sherman Act violation, the indirect purchasers seek injunctive relief requiring Defendants to: (1) not allocate market share; (2) void any existing

co-packing agreements, not make new co-packing agreements, and not share pricing information or information about tank-fill levels; and (3) increase the fill levels of the tanks to 17 pounds of propane. The district court ruled that the indirect purchasers lack standing to seek injunctive relief.

"[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (citation omitted). To have standing to seek injunctive relief,

> a plaintiff must show that he is under threat of suffering "injury in fact" that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.

*Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects," *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974), or by "a sufficient likelihood that [the plaintiff] will again be wronged in a similar way," *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

On the first standing element, the indirect purchasers argue that the "continued sale of the propane tanks filled to only fifteen pounds without a corresponding decrease in price constitutes an ongoing injury in fact." *In re Pre-Filled Propane Tank Antitrust Litig.*, 2016 WL 6963059, at \*3 (W.D. Mo. Jan. 13, 2016). The district court agreed: "Paying a supra-competitive price as a result of past anti-competitive behavior is a continuing effect, sufficient to establish an injury in fact." *Id.* But it concluded that "all three of Plaintiffs' requested injunctions fail for lack of redressability." *Id.* at \*5.

Specifically, the district court noted that the January 2015 FTC consent orders provide the same relief as sought in the first two injunction grounds. *See Faibisch v. University of Minnesota*, 304 F.3d 797, 802 (8th Cir. 2002) ("When deciding Rule 12(c) motions . . . courts may rely on matters within the public record."); *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459-60 (8th Cir. 2010) ("documents attached to or incorporated within a complaint are considered part of the pleadings, and courts may look at such documents 'for all purposes,' Fed.R.Civ.P. 10(c), including to determine whether a plaintiff has stated a plausible claim"). A plaintiff "is not entitled to injunctive relief to the extent other existing relief is adequate" and provides "substantially the same relief." *National Farmers' Org., Inc. v. Associated Milk Producers, Inc.*, 850 F.2d 1286, 1309 (8th Cir. 1988). On appeal, the indirect purchasers argue that the injunction grounds "exceed[] the scope of that provided for in the FTC Consent Orders."

On the first ground—a ban on allocating market share—the district court focused on how the FTC orders bar Defendants from raising, fixing, maintaining, or stabilizing prices of the tanks through any means. The FTC orders say:

> [Defendants are prohibited from] [e]ntering into, attempting to enter into, adhering to, participating in, maintaining, organizing, implementing, enforcing, inviting, offering or soliciting any combination, conspiracy, agreement, or understanding between or among [Defendants] and any Competitor to raise, fix, maintain, or stabilize prices or price levels of Propane Tanks through any means, including modifying the Fill Level contained in Propane Tanks sold by [Defendants] and/or its Competitors, or coordinating Communications to customers of [Defendants] and/or their Competitors.

The indirect purchasers argue: "Even if competitors are enjoined from agreeing to fix prices and stop doing so, they may still agree to allocate markets, and due to the resulting lack of competition, have the ability to charge supra-competitive prices independent of a continuing agreement to do so."

The indirect purchasers, however, ignore the "through any means" language in the FTC orders. In the amended complaint, they allege that market-share allocation is a means of fixing prices: "AmeriGas and Blue Rhino also agreed to allocate customers and markets between themselves in furtherance of their collusion to maintain prices at supracompetitive levels." As the district court noted, "Plaintiffs do not allege the existence of a market share allocation agreement divorced from any allegations of price fixing." *Pre-Filled Propane*, 2016 WL 6963059, at *5. Under the indirect purchasers' own theory, market-share allocation violates the FTC orders' ban on fixing prices. The first injunction ground does not exceed the scope of the FTC orders.

On the second ground, the indirect purchasers want Defendants to void any existing co-packing agreements, refrain from making new co-packing agreements, and refrain from sharing pricing information or information about tank fill levels. In the amended complaint, they allege that the co-packing agreements "facilitate[] the exchange of pricing information between two direct competitors" and "present[] ample opportunities for conspiratorial communications." But the FTC orders cover those issues by prohibiting Defendants from exchanging "Competitively Sensitive Non-Public Information." That includes "pricing, pricing strategies, Fill Level strategies, costs, revenues, margins, output, business and strategic plans, marketing, customer information and Communications with customers, advertising, promotion or research and development."

The indirect purchasers counter, asserting that both the first and second injunction grounds are necessary because "there exists some cognizable danger of recurrent violation." *United States v. Borden Co.*, 347 U.S. 514, 520 (1954) (citation omitted) (discussing simultaneous use of public and private antitrust injunctions). They contend that the "FTC Consent Orders are relatively weak. In essence, they merely require Defendants to promise not to break the law again." According to them, "[d]iscovery could establish, for example, that Defendants have been violating

-10-

the terms of the FTC Consent Orders and the FTC either is unaware or has not been adequately enforcing the terms of the Orders—a problem which Plaintiffs would have no standing to address absent an independent suit."

In other words, the indirect purchasers believe that Defendants are engaging in "recurrent violations" of the FTC orders. They focus on how the district court explained:

> "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974). Thus, Defendants' allegedly anti-competitive actions in 2008 are alone insufficient to establish a present injury in fact, entitling Plaintiffs to injunctive relief. However, such past exposure is sufficient if it is accompanied by "continuing, present adverse effects." *Id.* at 496. Paying a supra-competitive price as a result of past anti-competitive behavior is a continuing effect, sufficient to establish an injury in fact.
>
> . . . .
>
> [T]he allegation that Defendants colluded to raise prices and the allegation that the prices have remained inflated are not legal conclusion but factual assertions. Accordingly, this Court appropriately accepts them as true and finds that Plaintiffs have alleged a sufficient injury in fact.

*Pre–Filled Propane Tank Antitrust Litig.*, 2016 WL 6963059, at *3-4. The indirect purchasers argue that the district court's conclusion means that Defendants are recurrently violating the FTC orders, necessitating private injunctive relief.

True, "the law is clear that public and private antitrust injunctions may coexist without regard for one another." *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 249 (3d Cir. 2010), *citing* *Borden*, 347 U.S. at 518 (in antitrust cases, public and private claims for injunctive relief are "designed to be cumulative,

not mutually exclusive"). "[T]he mere existence of [a government consent order] does not preclude private injunctive relief. . . . However, the party seeking the injunction nonetheless has the burden of establishing that such cumulative relief is needed" through the "cognizable danger of recurrent violation" standard from *Borden*. *In re Nifedipine Antitrust Litig.*, 335 F. Supp. 2d 6, 17 (D.D.C. 2004) (internal quotation marks omitted), *citing Borden*, 347 U.S. at 518; *see also Howard Hess*, 602 F.3d at 249 ("nothing in *Borden* intimates that a private litigant is relieved of its evidentiary burden of showing an entitlement to injunctive relief when the government has already obtained its own injunction.").

The indirect purchasers, however, must adequately plead that Defendants are, post-January 2015, conspiring to charge supra-competitive prices, resulting in "some cognizable danger of recurrent violation" of the FTC orders. A complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plausible claim must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, *quoting Twombly*, 550 U.S. at 556. "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, *citing Twombly*, 550 U.S. at 556. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*, *quoting Twombly*, 550 U.S. at 555, 557 (citation omitted). Rather, the facts alleged "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "As a general rule, a Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard as a 12(b)(6) motion to dismiss." *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1233 n.3 (8th Cir. 2010); *see also Cafasso v. General Dynamics C4 Sys.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (collecting cases from the Second, Fifth, and Sixth Circuits to conclude that the *Twombly* and *Iqbal* standard applies to Rule 12(c) motions.).

In *Propane En Banc*, this court considered whether the direct purchasers sufficiently alleged "unlawfully high priced sales during the class period" resulting from a price-fixing conspiracy, an element in determining "whether the amended complaint adequately pleads a continuing violation sufficient to restart the statute of limitations." ***Propane En Banc***, 860 F.3d at 1068 (internal quotation marks omitted). The direct purchasers pled (1) "Defendants' anticompetitive conduct lasted at least from July 21, 2008 through January 9, 2015," and (2) "Defendants' unlawful communications regarding pricing, fill levels, and market allocation continued until at least late 2010." *Id.* at 1069-70. This court concluded that those allegations were "naked assertion[s] devoid of further factual enhancement," *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted), that do not "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555. ***Propane En Banc***, 860 F.3d at 1070. Other allegations, however, sufficiently "list[ed] relevant individuals, acts, and conversations" in 2008 and 2010 to plead "that the conspiracy continued into the class period." *Id.* at 1069-70.

The indirect purchasers emphasize how they plead: (1) "Defendants' conspiracy is a continuing conspiracy. Both defendants have continued to maintain the reduced fill levels despite the fact that propane prices have decreased substantially from their 2008 high"; (2) "Despite their settlements [in *Propane I*], Defendants continued to conspire, and rather than resuming competition, maintained their illegally agreed-upon fill levels, preserving the unlawfully inflated prices that their conspiracy had produced"; (3) "The conduct of Defendants is continuing and will continue to impose antitrust injury on class members unless equitable relief is granted"; and (4) "Prices for propane exchange tanks sold by Defendants have been fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout each State set forth below."

These allegations echo those found insufficient in *Propane En Banc*—that is—they are "naked assertion[s] devoid of further factual enhancement," *Iqbal*, 556

U.S. at 678 (internal quotation marks omitted), that do not "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555. *See **Propane En Banc***, 860 F.3d at 1069-70. Yes, the *Ortiz* and *Orr* complaints contain allegations detailing events *in 2008 and through 2010* like those found sufficient in *Propane En Banc* to plead "that the conspiracy continued into the class period."

But neither those allegations nor others in the complaints "list relevant individuals, acts, and conversations, providing 'factual content' to support "the reasonable inference that the defendant is liable for the misconduct alleged," that Defendants are conspiring to charge supra-competitive prices and are engaging in "recurrent violations" of the *January 7, 2015* consent orders. ***Id.***, *quoting **Iqbal***, 556 U.S. at 678. The indirect purchasers have not even adequately pleaded that Defendants are currently charging supra-competitive prices, let alone a conspiracy. The issue here is different than that in *Propane En Banc*. But *Propane En Banc*'s pleading discussion controls. The indirect purchasers inadequately plead an injury-in-fact.

The indirect purchasers' inadequate pleading of an injury-in-fact also means they lack standing to pursue the third injunction ground (not addressed in the FTC orders)—to increase the fill levels of the tanks to 17 pounds of propane. Even if they had adequately pled an injury-in-fact, as the district court noted, the parties "agree that mandating an increase in the amount of propane in the tanks without a mandate regarding price would not decrease the price per pound of propane tanks." ***Pre-Filled Propane***, 2016 WL 6963059, at *5. An increase in the fill level does not mean that the claimed injury will be redressed.

The indirect purchasers in *Ortiz* and *Orr* lack standing to pursue their injunctive-relief claims. This court need not address the argument that the district court erred in ruling that the doctrine of laches bars those claims.

III.

The indirect purchasers seek disgorgement for violations of Section 1 of the Sherman Act. Disgorgement is an equitable remedy that provides "a method of forcing a defendant to give up the amount by which he was unjustly enriched." *FTC v. Bronson Partners, LLC*, 654 F.3d 359, 372 (2d Cir. 2011) (citation and internal quotation marks omitted). They plead: (1) "As a direct result of their anticompetitive profits, Defendants have received profits far in excess of those that would have been received in a competitive market"; (2) "Disgorgement of these profits is necessary to divest Defendants of the fruits of their wrongful conduct"; and (3) "In the alternative, Plaintiffs request that Defendants be required to provide class members with propane equal in value to the fill reductions or the cash equivalent based on then existing wholesale prices." The district court dismissed the disgorgement claim as barred by the statute of limitations.

On appeal, the indirect purchasers contend that because disgorgement is an equitable remedy, the doctrine of laches, not the statute of limitations, governs timeliness. The district court apparently applied the statute of limitations because it considered the disgorgement claim a federal-antitrust-damages claim. But under *Illinois Brick*, only the "overcharged direct purchaser, and not others in the chain of manufacture or distribution" can sue for antitrust damages under Section 4 of the Clayton Act, 15 U.S.C. § 15, which provides a private right of action for violations of Section 1 of the Sherman Act. *Illinois Brick*, 431 U.S. at 729; *Ginsburg*, 623 F.3d at 1233 (citing *Illinois Brick* to explain: "As indirect purchasers, they may not sue for damages under the Clayton Act. But indirect purchasers are private parties who may sue for injunctive relief under § 16 of the Act.").

In *Illinois Brick*, the Supreme Court barred indirect-purchaser suits for federal antitrust damages, reasoning that those suits "would create a serious risk of multiple liability for defendants" and "the possibility of inconsistent adjudications." *Illinois*

-15-

***Brick***, 431 U.S. at 730.  The Court was also concerned about the "uncertainties and difficulties in analyzing price and out-put decisions 'in the real economic world' . . . and of the costs to the judicial system and the efficient enforcement of the antitrust laws of attempting to reconstruct those decisions in the courtroom."  ***Id.*** at 731-32.

At the district court, Defendants argued that disgorgement "is a thinly-veiled attempt to circumvent the long-standing holding of *Illinois Brick*."  The district court did not address this issue.  But other courts have concluded that *Illinois Brick* prohibits indirect purchasers from seeking disgorgement:

> Although the Court's concern [in *Illinois Brick*] for the complexity of the damages proceeding is not implicated by a disgorgement action, permitting disgorgement does raise the specter of duplicative recoveries. Under the Clayton Act, private parties . . . can already pursue direct purchaser actions for treble damages under § 4. 15 U.S.C. § 15. . . . Permitting disgorgement under § 16 would provide yet another route to defendants' allegedly ill-gotten gains, and would therefore heighten the possibility that defendants in antitrust actions could be exposed to multiple liability.  While disgorgement would have the additional benefit of permitting [compensation for] indirect purchasers who are excluded from recovery under current law, the Supreme Court weighed this interest against the threat of duplicative recovery and determined that only direct purchasers have standing under the Clayton Act.

***FTC v. Mylan Labs., Inc.***, 62 F. Supp. 2d 25, 41 (D.D.C. 1999); *see also* ***In re Digital Music Antitrust Litig.***, 812 F. Supp. 2d 390, 412 (S.D.N.Y. 2011) ("it is beyond peradventure that indirect purchasers may not employ unjust enrichment to skirt the limitation on recovery imposed by *Illinois Brick* . . . . Moreover, there is no clearly established federal common law of restitution for a federal antitrust violation, and Plaintiffs do not suggest that the Court create one.  Therefore, absent a basis for restitution in federal law both direct and indirect purchasers may not bring unjust enrichment claims premised solely on a violation of federal law."); ***In re Flonase Antitrust Litig.***, 692 F. Supp. 2d 524, 542 (E.D. Pa. 2010) ("The policy of *Illinois*

*Brick* prohibits indirect purchasers from suing the manufacturer to recover any ill-gotten gains the manufacturer has obtained by violating antitrust laws. . . . Allowing indirect purchasers to recover and recoup a benefit from the defendant under an unjust enrichment theory would circumvent the policy choice of *Illinois Brick*."); **In re Terazosin Hydrochloride Antitrust Litig.**, 160 F. Supp. 2d 1365, 1380 (S.D. Fla. 2001) ("*Illinois Brick* expressed concerns that indirect purchasers actions would lead to complex apportionment disputes among injured parties, undermine the efficient enforcement of antitrust laws, or expose defendants to the risk of multiple liability. The end payors' unjust enrichment claim raises identical concerns. . . . State legislatures and courts that adopted the *Illinois Brick* rule against indirect purchaser antitrust suits did not intend to allow an end run around the policies allowing only direct purchasers to recover.") (internal citations and quotation marks omitted).

This court agrees with those district courts. Here, the indirect purchasers are trying to use disgorgement to get profits, or "propane equal in value to the fill reductions or the cash equivalent based on then existing wholesale prices." Those requests violate the policy concerns in *Illinois Brick*. The indirect purchasers cannot pursue disgorgement, an impermissible attempt to circumvent Supreme Court precedent. *See* **Brown v. St. Louis Police Dep't of City of St. Louis**, 691 F.2d 393, 396 (8th Cir. 1982) ("We may . . . affirm on any ground supported by the record").

IV.

The indirect purchasers argue that this court's holding in *Propane En Banc*—that "'each sale to the plaintiff[s]' in a price-fixing conspiracy 'starts the statutory period running again'"—means that the state-law-damages claims of the new purchaser subclasses and the six-year statute-of-limitations subclass are not time-barred. *See* **Propane En Banc**, 860 F.3d at 1068, *quoting* **Klehr v. A.O. Smith Corp.**, 521 U.S. 179, 189 (1997). This court declines to address that issue, instead remanding to the district court to consider a threshold issue: assuming timeliness, whether the state-law-damages claims should remain in federal court.

Federal courts "possess only that power authorized by Constitution and statute." ***Kokkonen v. Guardian Life Ins. Co. of Am.***, 511 U.S. 375, 377 (1994). "[I]t is well established—in certain classes of cases—that, once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy." ***Exxon Mobil Corp. v. Allapattah Servs., Inc.***, 545 U.S. 546, 552 (2005).

But "Congress unambiguously gave district courts discretion in 28 U.S.C. § 1367(c) to dismiss supplemental state law claims when all federal claims have been dismissed." ***Gibson v. Weber***, 431 F.3d 339, 342 (8th Cir. 2005). By § 1367(c):

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Here, this court has affirmed the dismissals of this case's federal claims. And this case appears to raise "novel or complex" issues of the laws of multiple states. This court remands to the district court to analyze under § 1367(c) whether it should exercise supplemental jurisdiction over the state-law claims. *See **Lapides v. Board of Regents of Univ. Sys. of Georgia***, 535 U.S. 613, 624 (2002) (noting that under § 1367(c)(3), "the District Court may well find that this case, now raising only state-law issues, should . . . be remanded to the state courts for determination."). If the district court decides to exercise supplemental jurisdiction, then this court directs the district

court to consider the impact of *Propane En Banc* on the timeliness of the state-law claims.

*******

The judgment is affirmed in part, and the case remanded for proceedings consistent with this opinion.

_____